James Earl CATES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 12–99–00343–CR, 12–99–00346–CR, 12–99–00344–CR, 12–99–00345–CR.

Court of Appeals of Texas, Tyler.

Dec. 5, 2001.

Kevin L. Wentz, for Appellant.

Dan McCrory, for State.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

SAM GRIFFITH, Justice.

The opinion heretofore entered on April 30, 2001, is set aside and the same is hereby withdrawn and the following opinion is entered in lieu thereof, to wit:

James Earl Cates ("Appellant"), appeals four convictions [1] of aggravated sexual assault of two sisters, seven-year-old Ch. H. ("Ch.") and eight-year-old Ca. H. ("Ca."). A jury returned a verdict of guilty and assessed his punishment at imprisonment for ninety-nine years and a fine of $10,000.00 in each case. Appellant raises twelve issues on appeal. We affirm.

## BACKGROUND

The mother of Ca. and Ch. was engaged to Appellant. In March 1999, she took her daughters and their fifteen-year-old babysitter to visit her sister in another town. While they were at her sister's house, Ca. and Ch. told their babysitter about Appellant's sexual actions against them. The babysitter wrote down what they said and gave the letter to their mother. The mother read the letter, asked her daughters about the allegations, and the family returned home to Houston. When the mother confronted Appellant with the allegations in the presence of the two girls and the babysitter, Appellant denied the allegations. However, when the mother left the immediate area, she overheard Appellant tell the girls, "... that was our secret.... You weren't supposed to tell." The mother then attempted to shoot Appellant, but the revolver did not have a bullet in the chamber. Appellant left the house. Medical examination of both Ch. and Ca. revealed physical conditions which could indicate sexual trauma. At trial, Appellant denied the allegations.

## LEGAL SUFFICIENCY

Appellant contends in his eleventh issue that the evidence was legally insufficient to sustain the Appellant's conviction. In reviewing a legal sufficiency question, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905

1. Appellate Cause Number 12–99–00343–CR, being Trial Cause Number 809,136, Appellate Cause Number 12–99–00344–CR, being Trial Cause Number 809,137, Appellate Cause

Numbers 12–99–00345 CR, being Trial Cause Number 808,230, and 12–99–00346–CR, being Trial Cause Number 808,229, were consolidated and tried together.

S.W.2d 570, 574 (Tex.Crim.App.1995). The trier of fact, here, the jury, is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.1994); *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App. 1984). The jury is entitled to draw reasonable inferences from the evidence. *Benavides v. State,* 763 S.W.2d 587, 588–89 (Tex.App.-Corpus Christi 1988, pet. ref'd). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986). The evidence is measured for sufficiency by looking at the indictment as incorporated in the court's charge to the jury. *Fisher v. State,* 887 S.W.2d 49, 53 (Tex.Crim.App.1994) (op. on reh'g).

A person commits the offense of aggravated sexual assault if the person:

. . .

 (B) intentionally or knowingly:

 (i) causes the penetration of the anus or female sexual organ of a child by any means;

 (ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

 (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

 (iv) cause the anus of a child to contact the mouth, anus or sexual organ of another person, including the actor; or

 (v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

 (2) if:

. . .

 (B) the victim is younger than 14 years of age

. . .

TEX. PEN.CODE ANN. §§ 22.021(a)(1)(B) and (a)(2)(B) (Vernon 2000).

■ Ch. testified that Appellant put his mouth on her sexual organ, and penetrated her sexual organ with a vibrator. She also testified Appellant put his mouth on her sister's sexual organ. She also testified Appellant made her touch his sexual organ with her hands and made her and her sister touch his sexual organ with their mouths. Ca. testified that Appellant put his mouth on her female sexual organ, put his "weiner" in her female sexual organ, and made her put her mouth on his sexual organ. She also testified she saw Appellant do the same to her sister.

Their mother testified she had primary custody of her two daughters. She testified she met Appellant approximately six years ago, that she and Appellant were engaged, and that they had a sexual relationship. She further testified that Appellant brought items into her house, including Viagra, pornographic movies, and five sexual vibrators. She testified that in February 1999, she found a vibrator in the bedroom the girls shared. She also testified that in March 1999, Appellant came to live with them because the trailer house he lived in had burned down. The weekend after he moved in, she took her daughters and the babysitter out-of-town to visit her sister. The babysitter gave the mother a letter she had written which stated the young girls' accusations against Appellant. The girls told their mother Appellant had kissed them, used a vibrator on them, digitally violated them, and had sex with them. The mother testified that after they returned home and Appellant came in, she confronted Appellant. He denied the accusations, but when she left the immediate area, she overheard Appellant tell her

daughters that their sexual activities were their "secret." She called the police, and they interviewed the girls. The mother testified that her two daughters were placed in counseling and medically evaluated.

Patricia Handy, a Houston police officer, testified that she responded to the victims' home, talked with the girls and their mother about the sexual allegations. Handy testified that she collected evidence at their home, including several vibrators.

The babysitter testified she went out-of-town with the family to visit the mother's sister, that Ca. and Ch. told her of Appellant's sexual activity against them, and because she was embarrassed by some of the language the girls used, she wrote down the comments and gave the note to their mother. She also testified that Appellant told the girls their activity was their secret.

Natalie McClean, a nurse practitioner at the Children's Assessment Center, testified that she examined Ca. for evidence of sexual activity. She concluded from her examination that there was evidence of vaginal penetration. Ca. told her Appellant had sexually abused her and had used a vibrator on her. McClean testified from Dr. Sheila Lahoti's medical records, where he noted that Ch. told him Appellant had been sexually abusing her and there was physical abnormalities suggesting vaginal penetration. She further testified that the physical examinations of the genitals of Ca. and Ch. were consistent with their accusations against Appellant.

Counsel for Appellant called the mother to testify regarding Appellant's seemingly good relationship with her daughters, as she perceived it before the allegations arose. Appellant also called the victims' father to testify to his and his ex-wife's relationship, and their relationship with their daughters. Appellant testified re-garding his relationship with his own children and family, and stated that he had never been accused of any improprieties with his children or grandchildren. Appellant's sister testified that she did not know of any prior sexual allegations against Appellant.

The testimony was legally sufficient to support the conviction of Appellant. Appellant's eleventh point of error is overruled.

### FACTUAL SUFFICIENCY

Appellant contends in his twelfth issue that the evidence was factually insufficient to sustain Appellant's conviction. When reviewing the factual sufficiency of the evidence, we view all the evidence, but not in the light most favorable to the prosecution. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). In conducting this analysis, our duty is to examine the trier of fact's weighing of the evidence. *Scott v. State,* 934 S.W.2d 396, 398 (Tex.App.Dallas 1996, no pet.). We consider all of the evidence in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence that tends to prove guilt with the evidence that tends to disprove it. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). Because we consider all of the evidence in conducting a factual sufficiency review, we necessarily consider any reasonable alternative hypotheses raised by the evidence. *Ates v. State,* 21 S.W.3d 384, 391 (Tex. App.-Tyler 2000, no pet.); *Richardson v. State,* 973 S.W.2d 384, 387 (Tex.App.Dallas 1998, no pet.). However, the mere existence of a reasonable alternative hypothesis does not render the evidence factually

**690**

insufficient. *Ates*, 21 S.W.3d at 391; *Richardson*, 973 S.W.2d at 387.

▮▮▮▮ Because the jury is the sole judge of the facts, we must give deference to jury findings. *Cain*, 958 S.W.2d at 407. What weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Id.* at 408–09. We are not free to re-weigh the evidence and set aside a jury verdict merely because we feel that a different result is more reasonable. *Id.* at 407. We cannot reverse the verdict if reasonable minds could differ about the conclusions to be drawn from the evidence. *Richardson*, 973 S.W.2d at 387. We find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407. A decision is not manifestly unjust merely because the jury resolved conflicting views in favor of the State. *Id.* at 410. Additionally, a decision is not manifestly unjust merely because the defense has presented a reasonable alternative hypothesis. *See Richardson*, 973 S.W.2d at 387; *Ates*, 21 S.W.3d at 391.

▮▮▮▮ Although we must give deference to jury findings because the jury is the sole judge of the facts, absolute deference is not the standard. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App.2000); *Cain*, 958 S.W.2d at 407. The degree of deference we give to jury findings must be proportionate with the facts which we can accurately glean from the trial record. *Johnson*, 23 S.W.3d at 8. Our factual sufficiency analysis can consider on those few matters bearing on credibility that can be fully determined from the cold appellate record. *Id.* Unless the appellate record before us reveals that a different result is appropriate, we must defer to the jury's determination concerning what weight to give contradictory testimonial evidence. *Id.* This is because resolution often turns on an evaluation of credibility and demeanor, and the jury was in attendance when the testimony was delivered. *Id.* We then accord this evidence appropriate consideration in the context of our overall analysis. *Id.* at 8–9. A factual sufficiency review encompasses the formulations used in both civil and criminal cases. *Id.* at 11. This means that the evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against he great weight and preponderance of the available evidence. *Id.* The Court of Criminal Appeals in *Johnson* further states:

> [T]he complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the prof of guilt is so obviously weak as to underlie confidence in the jury's determination, or the proof of guilt, although adequate taken alone, is greatly outweighed by contrary proof.

*Johnson*, 23 S.W.3d at 11.

▮▮▮▮ Applying the law to the facts in the present case, we cannot say the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The jury heard the evidence in both the State's case and Appellant's case. The State's case included testimony of Ca. and Ch., their mother, their babysitter, and the investigators. Appellant testified on his own behalf. His family members also testified on his behalf. The jury chose to believe the State's witnesses over Appellant and his witnesses. The jury witnessed the demeanor and testimony of the witnesses and were able to assess the credibility of the witnesses far better than a reviewing court depending solely on the cold record. Therefore, we hold there was factually sufficient evidence to support the

verdict. Appellant's twelfth point of error is overruled.

## DENIAL OF CONTINUANCE

■ Appellant's first issue alleges that the trial court abused its discretion in denying his motion for continuance. Appellant's trial counsel was substituted in on his case on April 28, 1999. The trial court set the case for trial monthly thereafter. Appellant's motion for continuance was filed July 19, 1999, the day of trial. In the motion for continuance, Appellant's trial counsel raised three contentions: (1) that counsel had been advised by court personnel that another case would be tried on July 19 and Appellant's case would be tried the following week, (2) that counsel had another case set for July 19 and had spent the weekend preparing for that case and had done nothing to prepare for Appellant's trial, and (3) that counsel had not notified defense witnesses and that a psychological test had not been completed.

Article 29.03 of the Texas Code of Criminal Procedure states that "[a] criminal action may be continued ..." by the trial court "... upon sufficient cause shown...." Article 29.06 of the Texas Code of Criminal Procedure outlines the procedure for a defendant's first motion for continuance based on the absence of witnesses. Article 29.06 requires the motion to state the name and address of each witness, together with "... the diligence which has been used to procure his attendance ...", and the facts expected to be proved by the witnesses, that the witness is not absent by the actions of the defendant, and that the motion is not made for delay.

■ Initially, it should be noted that Appellant's motion for continuance failed to meet the requirements of Article 29.06, in that it contained no defense witnesses' names or addresses, nor did it contain a summary of the testimony to be adduced through those witnesses, or that the witnesses were not unavailable because of the procurement or consent of Appellant. No analysis of the July 19th hearing on the motion for continuance is possible because the reporter's record filed in these cases does not contain the transcription of the July 19th hearing. Appellant did not supplement or attempt to supplement the reporter's record to provide the July 19th hearing. The only reporter's record related to the motion for continuance is contained in the July 20th pretrial hearing. The July 20th in-court discussion between Appellant's counsel and the trial judge related to Appellant's counsel's assertion that he was misled by the court coordinator regarding the scheduling of the trial of this case, and by the prosecutor's statement that he would be in trial in another court. Because of those statements, counsel believed Appellant's trial would actually begin the following Monday. In the brief discussion, the trial judge stated that his coordinator told him that Appellant's counsel had come in on the previous Friday to determine the order of cases to be tried, and the coordinator had told Appellant's counsel that she did not know the order of trials. The court also noted that when Appellant's counsel arrived in court from another court and filed his continuance and voiced his concerns, the court gave him an additional day to prepare for trial. The court offered to have the coordinator testify as to her conversation on July 19 with Appellant's counsel. Appellant's counsel did not call the coordinator or provide any substantive evidence at the brief July 20 hearing regarding the motion for continuance. The court denied the motion for continuance.

■ In the present case, without a reporter's record, it is difficult to ascertain the parameters of the trial difficulties cre-

ated by the denial of the motion for continuance, as perceived by the Appellant. An Appellant must present a sufficient record to demonstrate error which requires reversal. *Guzman v. State,* 923 S.W.2d 792, 795 (Tex.App.-Corpus Christi 1996, no pet.). It is Appellant's burden to establish a record supporting his claim and demonstrated that he asserted that right before the trial court. Mere assertions in a brief will not suffice. *Edwards v. State,* 867 S.W.2d 90, 95 (Tex.App.-Corpus Christi 1993, no pet.). Analysis is further hampered by the lack of specificity in the written motion for continuance regarding which witnesses would be unable to attend the trial if the trial was not continued, and the testimony anticipated from such witnesses.

However, the following can be gleaned from the clerk's record and the docket sheet. On April 28, 1999, Appellant's counsel filed a Motion to Substitute Counsel which both he and Appellant signed. In April and May, the court gave trial settings on these cases which both Appellant and his counsel signed. On June 16, 1999, they both signed an Agreed Setting notice for a hearing on pretrial motions for June 30, and a trial setting for July 19. In June, the State filed several documents, including a Notice of Intention to Use Child Abuse Victim's Hearsay Statement, a Motion to Consolidate, a Motion to Cumulate Sentence, and Notice of Extraneous Offenses, as well as the first of its subpoenas for State's witnesses. In June, Appellant filed several motions, including a request for punishment evidence, entitled "Notice of Punishment Evidence," as well as "Notice of Character Evidence Under 404(b)" and "Request for Notice of Misconduct the State Will Rely Upon to Seek Conviction". On June 30, pretrial was reset to July 1, then to July 6, which resetting Appellant and his counsel signed. On July 19, the day of trial, Appellant filed his motion for continuance.

The granting of a motion for continuance is within the discretion of the trial court. *Janecka v. State,* 937 S.W.2d 456, 469 (Tex.Crim.App.1996); *Cooks v. State,* 844 S.W.2d 697, 725 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). The Texas Court of Criminal Appeals has written that "[t]o establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion." *Janecka,* 937 S.W.2d at 468. More specific to the present case, in *Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex. Crim.App.1995), the Court of Criminal Appeals stated: "To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time." *Id.*

The United States Supreme Court has held that when reviewing a trial court's refusal to grant a defense additional time to prepare for a trial, ". . . great deference must be shown to trial courts, because of the scheduling problems they face." *United States v. Cronic,* 466 U.S. 648, 661–62 n. 31, 104 S.Ct. 2039, 2048–49 n. 31, 80 L.Ed.2d 657 (1984).

As previously noted, the trial court set this case each month after Appellant's trial counsel was substituted in, on April 28. During the month of June, Appellant's trial attorney filed pretrial motions. Although the motion for continuance indicated "defense witnesses have not been notified," Appellant called five witnesses during the trial in his defense. There is nothing to indicate whether the five witnesses called were the same witnesses he had failed to contact when he filed his continuance on June 19. We will not speculate as to the possible identity of Appellant's witnesses. The State called only nine witnesses.

Appellant's motion for continuance indicated that a psychological test set for Appellant had not been completed. The motion for continuance did not indicate the purpose of the test, the evidence to be developed from the test, the name of the testing professional, or the perceived harm to Appellant due to the inability to complete the test by the trial date.

Without the required specificity in the motion for continuance, and lacking a reporter's record of a hearing on July 19 on the motion for continuance,[2] Appellant has not met his burden of establishing that he was prejudiced by the court's denial of his motion for continuance. *Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511. Appellant has therefore not shown that the trial court abused its discretion in denying his motion for continuance. Appellant's first issue is overruled.

### DID THE DENIAL OF APPELLANT'S MOTION FOR CONTINUANCE CONSTITUTE DENIAL OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL?

Appellant contends in his second issue that he was denied his Sixth Amendment[3] right to effective assistance of counsel because of the trial court's denial of his motion for continuance. Appellant contends in his third issue, which he argued together with the second issue, that he was denied his Sixth Amendment right to effective assistance of counsel. Appellant's second and third issues expand upon his first issue, whereby he alleges the trial court abused its discretion in denying the

motion for continuance. Appellant now raises the contention that the denial of the motion for continuance had ramifications on his lawyer's effectiveness at trial. Having held that the denial of the motion for continuance was not an abuse of the trial court's discretion, we must now consider whether the denial of the motion for continuance resulted in a violation of Appellant's United States constitutional right to effective assistance of counsel.

 To determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel, appellant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. Second, assuming appellant has demonstrated deficient assistance, he must also affirmatively prove prejudice. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

 Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *McFar-*

---

**2.** There is no indication on the docket sheet of a hearing on the motion for continuance on July 19, 1999.

**3.** The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime

shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor and to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.

*land,* 928 S.W.2d at 500. Thus, to successfully demonstrate counsel's ineffectiveness, an appellant must present evidence, usually through a motion for new trial or a habeas corpus proceeding, illustrating trial counsel's strategy. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Kemp v. State,* 892 S.W.2d 112, 115 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). When determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to the trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim.App.1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and that it was motivated by sound trial strategy. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). An appellant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Id.* Generally, when the record contains no evidence of the reasoning behind counsel's conduct, we cannot conclude counsel's performance was deficient. *See Jackson,* 877 S.W.2d at 771.

The Texas Court of Criminal Appeals has tailored its analysis of effectiveness assistance of counsel issues using the whole cloth of the Supreme Court's *Strickland v. Washington/United States v. Cronic* language. In *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999), the Court outlined the two-pronged *Strickland* test requirements. The Court noted that absent a showing of both deficient performance by the lawyer and sufficient prejudice as a result of that deficient performance "... an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable." *Ex parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993).

▪ Appellant contends in his second issue that trial counsel was rendered ineffective due to the denial of the motion for continuance. He points to several instances which, he contends demonstrate and support his claims of ineffectiveness: (1) failure to prepare for trial, (2) failure to contact, prepare and subpoena witnesses, and (3) failure to file subpoenas. Appellant contends in his third issue that trial counsel's deficiencies includes: (1) failure to contact, prepare and present defense witnesses, (2) insufficient voir dire questioning, (3) failure to object to extraneous sexual misconduct and seek a limiting instruction, (4) failure to object to testimony regarding the victim's counseling, and (5) failure to prepare and adequately question a defense witness.

Appellant has failed to specifically demonstrate how "failing to prepare," subpoena witnesses,[4] or prepare witnesses would have overcome the testimony of Ca. and Ch., their mother, or that of other State's witnesses. Appellant has also failed to demonstrate how an alleged insufficient voir dire or questioning of a defense witness affected the trial of the case. Thus, Appellant failed, as specifically required by *Strickland,* "... to show that there is a reasonable probability that, but for ...." his trial counsel's representation, "... the result of the proceeding would have been

---

**4.** In *Hernandez v. State,* the case in which the Texas Court of Criminal Appeals adopted and followed *Strickland,* the Court of Criminal Appeals wrote: "Though trial counsel's behavior with respect to the subpoenas evidenced lack of preparedness, we cannot say on this record that there is a reasonable probability the result of the trial would have been different if counsel had seen to it that Rodriguez testified." 726 S.W.2d 53, 58 (Tex.Crim.App. 1986).

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 693, 104 S.Ct. at 2068. Having failed to meet his burden, Appellant's issue fails.

 Consistent with the requirements enunciated in *Strickland* and its progeny, Appellant has failed to specifically establish the alleged deficient performance of trial counsel, and further, failed to establish, that as a result of those specified deficient acts of trial counsel, that Appellant was so prejudiced as to undermine confidence in the outcome. It should be noted that Appellant's additional issues demonstrate, by contrast to his ineffective assistance of counsel claim, that trial counsel was involved in the trial, aware of the pertinent rules of evidence and trial procedure, and ardently defended Appellant's rights at trial, forcing the State to establish its case. The case law requires the appellant to "... prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by only a portion of trial, denied him a fair trial ... He must show that there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt respecting guilt ..." of the appellant. *McFarland,* 928 S.W.2d at 500. The appellate court must "consider the totality of the evidence before the jury." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *McFarland,* 928 S.W.2d at 500. Further, such actions could constitute trial strategy of the trial counsel.

Reviewing the entire trial evidence which the jury heard and evaluated in reaching its verdict, it cannot be said that, but for the trial counsel's errors alleged by Appellant, the jury, the fact finder, would have had a reasonable doubt respecting Appellant' guilt. Appellant thus failed to carry his burden of meeting the two-prong requirements of *Strickland.* Appellant's second and third issues are overruled.

### DENIAL OF APPELLANT'S REQUEST FOR STATE'S ELECTION

 In his fourth issue, Appellant contends the trial court erred in not requiring the State to elect which specific acts of prior sexual misconduct it would rely upon to prove its cases.

 The State filed a "Notice of Extraneous Offenses" which listed sixteen different sexual acts which it contended were committed by Appellant against Ca. and Ch. The extraneous offenses, provided in identical pairs of allegations, alleged that Appellant committed the same sexual act against first one sister, then the other, the acts having been alleged to have occurred between January 1, 1998 and March 14, 1999. The four indictments against Appellant, two indictments alleging sexual acts against Ca. and two indictments alleging sexual acts against Ch., were consolidated for trial. Prior to trial,[5] and again at the conclusion of the State's case, Appellant asked the Court to require the State to elect which four of the acts, about which Ca. and Ch. testified, they were relying upon to establish and support the charged offenses. The court denied both of Appellant's motions.

5. At the pretrial hearing, the State contended that the sexual assaults were committed "pursuant to a continuing course of criminal action." However, as there was no evidence that "the acts of intercourse were committed by one continuous act of force and threats," the State's theory of the case to provide an exception to the requirement of election is inapplicable. *See Crawford v. State,* 696 S.W.2d 903, 906 (Tex.Crim.App.1985).

As the Court of Criminal Appeals wrote in *O'Neal v. State:*

> The trial court in its discretion may order the State to make its election at any time prior to the resting of the State's case in chief. However, once the State rests its case in chief, in the face of a timely request by the defendant, the trial court **must** [emphasis added] order the State to make its election. Failure to do so constitutes error.

746 S.W.2d 769, 772 (Tex.Crim.App.1988)(emphasis in original); *see also Yzaguirre v. State,* 957 S.W.2d 38, 40 (Tex.Crim.App.1997); *Scoggan v. State,* 799 S.W.2d 679, 680–81 (Tex.Crim.App. 1990); *Crawford v. State,* 696 S.W.2d 903, 906 (Tex.Crim.App.1985); *Crosslin v. State,* 90 Tex.Crim.App. 467, 90 Tex.Crim. 467, 235 S.W. 905 (1921).

The *Crawford* court noted that "... where more than one act of intercourse is shown, upon motion of the accused, the State should be required to elect as to which act it will rely on for a conviction. [citations omitted] Thus, the State was required to elect, and failure to do so was reversible error." 696 S.W.2d at 906.

Because the four cases were consolidated and tried together, the testimony of Ca. and Ch. regarding each of the four charged offenses were admissible. Appellant does not complain on appeal of the admission of testimony regarding extraneous offenses, which had been disclosed pursuant to the request for extraneous testimony. However, the testimony of Ch.

was that she had been sexually assaulted on "ten or twelve nights." Similarly, Ca. testified that she had been sexually assaulted "a lot."

The testimony of Ca. and Ch. referred not only to the sexual activity for which Appellant was indicted [6] and which was described in the indictments, but also other uncharged sexual contact and assaultive actions. Thus, evidence of separate sexual assaultive offenses for which Appellant could have been indicted was presented to the jury. As these were potentially separate offenses, Appellant, on proper request, was entitled to know which of the offenses about which testimony was adduced were the bases for prosecution on the four indictments. Appellant requested, both before the trial and when the State rested, that the trial court require the State to elect which of the offenses about which the two victims testified were the bases for the indictments. The court, however, specifically overruled Appellant's requests. The Court of Criminal Appeals has held this to be error. *O'Neal v. State,* 746 S.W.2d 769, 772 (Tex.Crim.App.1988).

▮▮ The denial of the request for election being error, the appellate court must determine if the error is one of constitutional dimension,[7] to determine the appropriate standard for evaluating the error. In *Wilson v. State,* the Waco Court of Appeals was faced with a similar fact situation involving an indictment alleging aggravated sexual assault of a child. During the trial, the victim testified to numerous incidents of sexual intercourse. *Wilson,* 3

---

**6.** In Appellate Cause Number 12–99–00343–CR, Trial Cause Number 809137, Appellant was charged with penetrating Ca.'s sexual organ with a vibrator. In Appellate Cause Number 12–99–00344–CR, Trial Cause Number 809136, Appellant was charged with causing Ca.'s sexual organ to contact Appellant's mouth. In Appellate Cause Number 12–99–00345–CR, Trial Cause Number 80923, Appel-

lant was charged with causing Ch.'s sexual organ to contact Appellant's sexual organ. In Appellate Cause Number 12–99–00346–CR, Trial Cause Number 809229, Appellant was charged with causing Ch.'s sexual organ to contact Appellant's mouth.

**7.** *Compare* **44.2(a)** *Constitutional Error with* **44.2(b)** *Other Errors.*

S.W.3d 223 (Tex.App.-Waco 1999, pet. ref'd). The *Wilson* Court held that failure of the trial court to require the State to elect for which offense it sought a conviction on its indictment was not an error of constitutional dimension. *Wilson,* 3 S.W.3d at 226.

Texas Rule of Appellate Procedure 44.2(b),[8] which states the standard of review for criminal cases involving non-constitutional error, requires the appellate court to examine the record in its entirety to determine whether the error of failing to require an election by the State affected a substantial right of the appellant. *See* TEX.R.APP. P. 44.2(b). The Court of Criminal Appeals has stated that "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)." *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

▬▬▬ To assess the harm to Appellant, pursuant to Rule 44.2(b):

> We review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Wilson v. State,* 3 S.W.3d at 226 (Tex.App.-Waco 1999), *citing Fowler v. State,* 958 S.W.2d 853, 866 (Tex.App.-Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999);

*see also Llamas v. State,* 12 S.W.3d 469 (Tex.Crim.App.2000).

The Court of Criminal Appeals recently explained the steps in conducting a harm analysis under Rule 44.2(b) as follows:

> In order to properly conduct a harm analysis under 44.2(b), an appellate court need only determine whether or not the error affected a substantial right of the defendant. To make this determination, appellate courts must decide whether the error had a substantial or injurious affect (*sic*) on the jury verdict. The very process of reaching this decision, (*sic*) is the performance of a Rule 44.2(b) harm analysis.

*Llamas v. State,* 12 S.W.3d at 471 n. 2.

In the present four consolidated cases, the jury heard the testimony from the two young victims who testified about numerous sexual assaults by Appellant. Due to the ages of the victims, however, they were unable to provide great detail regarding the assaults, their testimony lacking specificity regarding dates or cogent descriptions of a specific attack. Rather, as commonly found in the testimony of very young sexual assault victims, the descriptions are sparse, limited by the child's lack of understanding of anatomy and of sexual terminology and behavior. The children were unable to specify when the events occurred and were unable to coherently describe distinct events.

In addition to the children's testimony, the mother and the babysitter testified about the girls' statements to them. The nurse practitioner testified about confirming medical evaluations. The jury heard testimony from the police investigator about Appellant's sexual devices she recov-

---

8. **44.2 Reversible Error in Criminal Cases.**

*(b) Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

ered from the house. Taken together, the testimony offered by the State to substantiate the Appellant's guilt was substantial.

Balanced by the young victims' indistinct testimony as to individual events, any harm of the trial court in failing to require the state to elect which of the sexual acts to which the children testified did not influence the jury's verdict. Considering as well the statutory intent providing latitude for introduction of evidence of sexual abuse of children due to young children's inability to articulate or specify dates and times, upon reviewing the entire record, we cannot determine the trial court error had more than a slight influence on the verdict. We do not, in light of the entire record, have "grave doubts about the outcome", as the rule requires. The failure of the trial court to require the state to elect which specific acts it relied upon did not have a substantial or injurious effect on the jury verdict. Therefore, we overrule Appellant's fourth issue.

## THE TRIAL COURT'S FAILURE TO CONDUCT A 38.072 HEARING

■ Appellant contends in his fifth issue, which he argued together with his sixth issue, that the trial court erred in not holding a 38.072 hearing. Appellant complains of the failure of the court to conduct a hearing pursuant to article 38.072 of the Texas Code of Criminal Procedure regarding the "outcry" statement to the victims' mother. However, that is not the same objection the Appellant made at trial. Consequently, no error is preserved for appeal. *Fierro v. State*, 706 S.W.2d 310 (Tex.Crim.App.1986); *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App.1982); *Hightower v. State*, 736 S.W.2d 949, 953 (Tex.App.-Eastland 1987), *aff'd*, 822 S.W.2d 48 (Tex.Crim.App.1991).

Further, Appellant did not request a 38.072 hearing. Therefore, any error from

the failure to hold the hearing is waived. *Rodriguez v. State*, 762 S.W.2d 727, 731 (Tex.App.-San Antonio, 1988), *pet. dism'd as improvidently granted*, 815 S.W.2d 666 (Tex.Crim.App.1991); *Hightower*, 736 S.W.2d at 953; *Martinez v. State*, 732 S.W.2d 401, 403 (Tex.App.-Houston [14th Dist.] 1987, no pet.) Appellant's fifth issue is overruled.

## ADMISSION OF THE OUTCRY STATEMENT THROUGH THE VICTIMS' MOTHER

■ Appellant's sixth issue contends that the trial court erred in finding that the State had met its burden in allowing the admission of the victims' outcry statement to their mother, pursuant to article 38.072 of the Code of Criminal Procedure.

Appellant objected at a pretrial hearing regarding the person through whom the State sought to admit the victims' outcry statement. Appellant contended the outcry witness was the babysitter, as she was the first person to whom the outcry was made. The State argued the proper outcry witness was the victims' mother, the first person over eighteen years of age to whom they made their statement. During trial, Appellant objected to the testimony of the mother regarding statements from her daughters as hearsay.

Article 38.072 of the Code of Criminal Procedure provides a hearsay exception to the statements of a child younger than twelve years of age alleged to have been the victim of an enumerated sexual or assaultive offenses. Article 38.072, section 2(a)(2) of the Code of Criminal Procedure provides the exception to "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Thus, the fifteen-year-old babysitter did not meet the statutory requirements to be an outcry witness. The first person "18 years or older" to whom Ca. and Ch. made their

statements was their mother, who testified as to their outcry statements. Therefore, the trial court did not err in permitting the mother to testify as the outcry witness. Appellant's sixth issue is overruled.

### DID THE TRIAL COURT ERR IN RULING THE MOTHER COULD TESTIFY AS AN OUTCRY WITNESS?

■ Appellant contends in his seventh issue that the trial court erred in ruling that the mother could testify as an outcry witness. Appellant contends that, due to the lack of a hearing on the outcry statement, pursuant to article 38.072, and the failure of the State to prove its reliability, the court erred in admitting the mother's testimony about the outcry statement. This argument is bootstrapped onto the previous argument in issues five and six.

The Court of Criminal Appeals, wrote on the topic of admissibility of outcry statements and stated that "[a] trial court's findings will be upheld when they are supported by the evidence, and a trial court has broad discretion in determining the admissibility of such evidence. The exercise of that discretion will not be disturbed unless a clear abuse of that discretion is established by the record." *Garcia v. State,* 792 S.W.2d 88, 92 (Tex.Crim.App. 1990). Reviewing the entire record, we cannot say the trial court abused its discretion in allowing the mother of Ca. and Ch. to testify as an outcry witness.

Further, having failed to object to the lack of a 38.072 hearing to determine the admissibility of the mother's qualification as an outcry witness, pursuant to article 38.072, the Appellant's general objection to the testimony as "hearsay" was insufficient to advise the court the exact nature of, and basis for, his objection. Also, the same testimony was subsequently admitted without objection. *Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App.1991).

■ Finally, Appellant contends the outcry statements of Ca. and Ch. about which their mother testified were not sufficiently specific to establish the offense. Appellant cites *Garcia* as requiring more specificity about the acts of sexual abuse. However, the Court in *Garcia* described the statement as ". . . in some discernible manner describes the alleged offense. We believe that the statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia,* 792 S.W.2d at 91. The mother testified that her daughters told her about specific penetrations and other acts of sexual abuse. Clearly, her testimony was significantly more than a "general allusion" to the sexual abuse. Thus, we overrule Appellant's seventh issue.

### WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO OBJECT TO TESTIMONY OF STATE'S WITNESSES?

■ Appellant contends in his eighth, ninth, and tenth issues that he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed to object to the testimony of several of the State's witnesses, including Susan Szczygielski, issue eight, the victims' father, issue nine, and Dirk Bogaard, issue ten.

■ As stated previously, Appellant has the burden of establishing affirmatively the alleged ineffectiveness of trial counsel. Further, there is ". . . a strong presumption that counsel's conduct . . ." is sound trial strategy. *Strickland,* 104 S.Ct. at 2065, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (U.S.La.1955). The Appellant's burden is to ". . . prove that counsel's errors,

judged by the totality of the representation, not by isolated instances of error or by only a portion of trial, denied him a fair trial ... He must show that there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt respecting guilt...." *McFarland,* 928 S.W.2d at 500. Without a motion for new trial to establish on the record why trial counsel did not object to a given statement by State's witness, Appellant has not met his burden of establishing, on the record, trial counsel's reasoning for his action. Therefore, Appellant has failed to meet his burden. Appellant's eighth, ninth and tenth issues are overruled.

Having found no reversible error, we *affirm* Appellant's conviction.