# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00262-CR

**Enrique Alvarez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT NO. 2001-012, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Enrique Alvarez for indecency with a child by contact and the court assessed sentence at sixteen years in prison. Tex. Pen. Code Ann. § 21.11(a) (West 2003). On appeal, Alvarez complains that he was denied counsel; that the evidence admitted was inadmissible, conflicting, or insufficient; that he could not be tried in the Texas state courts; that the judge was not authorized to preside; and that his sentence constitutes cruel and unusual punishment. We will affirm the judgment.

## BACKGROUND

We have reviewed the appellate record and summarize the following evidence that is pertinent to the issues raised on appeal or useful in providing context to discussion of those issues.

Appellant's daughter, S.A., who was thirteen years old at the time of trial, testified that two years earlier, her father touched her indecently. In late February 2000, she lived with her seven-year-old sister, her nine-year-old brother, her mother, and appellant, her father. She testified that one morning, while her mother and sister were out shopping and her brother was in an adjacent room playing on the computer, she and appellant were in his bedroom. She was wearing underwear and a long T-shirt. He begged her to let him touch her breast and her vagina. Although she did not want to do so, she obeyed her father's request and got into the bed with him. He rubbed her breast under her bra and brushed her vagina under her panties. He then asked if she would touch his penis, then grabbed her hand and placed it on his penis. S.A. testified that his penis was soft. She said she felt disgusted, but did not tell him to stop because she was afraid. He then told her to keep the incident a secret or he would go to jail.

The incident was not repeated. The next day, appellant asked if he could touch her again, but she declined because she felt uncomfortable; he just laughed and watched television. A few weeks later, appellant called home from work. After talking to her mother, appellant asked to speak to S.A.; he asked if she had kept the secret.

On May 10, 2000, her twelfth birthday, her mother called her father to discuss S.A.'s failure to do her household chores like cleaning her room or sweeping the kitchen. Her father talked to S.A. and cursed her because she was disobeying her mother. Afterwards, S.A. told her brother, sister, and mother about the indecent touching. She said she had not told her mother before because she was afraid her father would hit her; he had hit her with a belt before and also had banged her head against a wooden bed post.

2

On May 12, 2000, investigators from Child Protective Services talked with her at school about the incident.[1] Afterward, she and her siblings were removed to foster care. Her mother has had bi-weekly supervised visitation. S.A. testified that, at the end of one of the visits, her mother hugged her and whispered in her ear a request that she not testify against appellant.

On cross-examination by appellant, proceeding *pro se*, S.A. could not remember the precise day that the incident occurred; she recalled that it was not a school day. She said that, before the incident, she, appellant, and her brother were horsing around in appellant's bedroom. Her brother left to play on the computer, and the incident occurred.

S.A. referred to appellant as "Mr. Alvarez" because she believed he had lost the right to be her father. She apparently told her siblings to do the same. Her therapist, Paul Johnson, testified that she was the only child he had ever treated who made that decision. At Johnson's suggestion, she wrote letters to her mother, urging her to believe S.A. and to testify in her favor.

S.A.'s brother, E.A., who was eleven at the time of trial, testified that on the morning of the incident, he finished playing on the computer and went to appellant's bedroom door where he heard whispering. He said he heard appellant ask S.A. if he could see her hand. E.A. said that eventually he went and looked in the bedroom and got scared because he saw some moving around under covers that did not look like playing. E.A. testified that when S.A. left the bedroom, she said

[1] Appellant indicates in his brief that, after his wife discussed S.A.'s story with a friend, the friend called a teen counseling service, which he says was actually a CPS hotline. The hotline workers notified CPS investigators.

3

that was the most disgusting thing she had ever seen. E.A. testified that a couple of weeks later he was sitting by S.A. during a telephone conversation with appellant; E.A. said he overheard appellant tell S.A. not to tell their secret or appellant would go to jail. E.A. said that S.A. was upset and crying during this call.

Kimberly Burke was counselor at Roxanne's House, a children's advocacy center within the Hays/Caldwell Women's Center. She interviewed S.A., E.A., and their younger sister, G.A., on May 17, 2000. S.A.'s videotaped interview was played for the court. It was essentially the same as her testimony in court regarding the sequence and the demand for secrecy. One difference was that she called appellant's private parts "his vagina;" when shown a diagram of the male anatomy, S.A. identified the part she touched as "testes or something." Another difference is that she said that, on the day after the incident, appellant asked if she wanted to touch him again, in contrast to her in-court testimony that he asked if he could touch her again. S.A. indicated that she talked to caseworkers about the incident before the taping.

On the videotape of G.A.'s interview with Burke, G.A. talked about the night S.A. told their mother that appellant touched S.A. with his hand. G.A. said the touch was "not playing" because S.A and her mother were acting really strange and not laughing when they were talking about it. G.A. said the police left a note that appellant was going to jail because he touched S.A.'s private.

E.A.'s statements in the videotaped interview were similar to his trial testimony, except that on the tape he said he did not hear what appellant and S.A. were whispering during the incident. His description of S.A.'s report to their mother was similar to S.A.'s description. He said

4

S.A. said that, after the incident, appellant was tickling S.A. and saying that he was playing. E.A. also talked about overhearing the first telephone conversation about the secret between S.A. and appellant. He said S.A. told him she could not tell him the secret or she would get slapped.

G.A., nine years old at the time of trial, testified in court briefly about overhearing S.A.'s report of the incident to their mother. There was a discrepancy between her recollection that she was awake during the initial report, and E.A.'s videotaped statement that G.A. was sleeping during the initial report.

Olgalydia Alvarez, the children's mother and appellant's wife, denied that S.A. reported any sexual incident to her because S.A. did not know those words. She said that S.A. only told her that appellant pushed her in the chest; she testified that S.A. did not report a touching of her genitals. Mrs. Alvarez testified that her children were removed from the house two days later before she had a chance to ask more questions. When called to testify by appellant, Mrs. Alvarez testified that, when S.A. first reported the incident to her, S.A. was angry because Mrs. Alvarez would not enroll her in tennis instruction until appellant returned from out of town. She later said that S.A. told her she was angry because, after appellant pushed her in the chest, he said he could not play with her like that any more. Mrs. Alvarez also testified that in May 2000 S.A. had started to wear shorts that were too short in defiance of school rules. She denied E.A.'s assertion that he heard her tell neighbors about the allegations, but she admitted discussing the problem with neighbors over the telephone while the children were at school. She denied that the CPS investigators offered her shelter.

5

Mrs. Alvarez testified that changes in S.A.'s vocabulary indicate that she is being manipulated by therapists. She denied telling S.A. not to testify against appellant; she said that the people supervising the visits would have overheard. She also said that she told S.A. that she believes her story. Mrs. Alvarez stated that she was getting divorced from appellant. She also stated that at one point, S.A. was upset with her and did not come to the supervised visitation.

Johnson, who was also therapist for S.A.'s siblings, said that S.A.'s behavior is consistent with a child who has been abused. She is angry, depressed, anxious, and feels guilty because she feels responsible for putting herself and her siblings in foster care; Johnson later conceded that the anger and other disturbances that S.A. showed were also consistent with being displaced from her home. He said that she is angry at her father for touching her and at her mother for not believing her. She told him that she did not make outcry sooner because she feared her father. Johnson testified that S.A.'s decision to call appellant "Mister" was an indicator of the level of her anger at appellant.

Tara Hopkins, a CPS investigator assigned to the case, testified that on May 11, 2000, she received a tip about the allegations and investigated the next day. She testified that S.A. told her about the incident. The aspect that differed in this version of the incident is that S.A. told her the touching started off as tickling play, then progressed as described before.

CPS investigator Linda Juarez testified that, during her visit to the Alvarez home on May 12, 2000, Mrs. Alvarez told her that her husband admitted touching S.A. inappropriately but that he said it was an accident, that it would not happen again, and that he was sorry. Juarez testified

6

that they removed the children out of concern for their safety when appellant arrived home that evening. She said that Mrs. Alvarez refused to go to the shelter with the children.

Appellant testified that the incident occurred on April 2, 2000. He said that he, E.A., and S.A. were watching wrestling on television that morning. He said that he and E.A. were mimicking the wrestling in the living room, and gradually made their way to appellant's bedroom. He was lying on the bed when first E.A., then S.A., jumped on him. He pushed E.A. off, then S.A. When he saw that pushing S.A. in the chest had upset her, he told E.A. they had to stop playing. When E.A. went into another room, appellant apologized to S.A. and told her it would not happen again.

Appellant testified that the family celebrated S.A.'s birthday on Sunday, May 7, 2000, because he had to go to a work-related seminar in Houston that week. On Monday, his wife called to tell him that S.A. had gone to school with shorts that violated the dress code and had come home with school-issue, ill-fitting pants. On Tuesday, his wife called to tell him that S.A. wanted to sign up for tennis; he told her they would have to wait to find out whether it would cost money. On Wednesday, his wife called him because S.A. was on the computer, not doing her homework, and not sweeping the kitchen; appellant said he talked to S.A. and told her to obey her mother. On Friday, his wife called him to tell him that a police officer and two women were approaching the house, then hung up.

On cross-examination, appellant denied S.A.'s statement that he touched her breast and vagina inside her underwear. He said she was lying and had convinced her siblings to lie as well. He theorized that she was lying because she was angry about not being signed up for tennis,

7

about being told to do chores, and about him ignoring her generally and on her birthday. He conceded that he had not put any of these contentions in his affidavit filed during the suit to terminate his parental rights. He admitted virtually every allegation in the indictment, but denied touching her genitals or having a sexual intent.

Appellant stated in court that he declined the assistance of an attorney both in the parental rights termination case and in this case. Appellant's parental rights were terminated in a separate civil proceeding. Although his appeal of the termination was pending at the time of this criminal trial, this Court has since affirmed the judgment of termination. *Alvarez v. Texas Dep't of Prot. & Reg. Servs.*, No. 03-02-00008-CV (Tex. App.—Austin, Nov. 21, 2002, no pet.) (not designated for publication).

## DISCUSSION

Appellant raises seven issues on appeal. He complains that he cannot be tried in the Texas state courts; that the judge was not authorized to preside; that he was denied counsel; that the evidence admitted was inadmissible, conflicting, or insufficient regarding intent; and that his sentence constitutes cruel and unusual punishment.

Appellant claims immunity from prosecution based on diversity of citizenship. He contends that he is a sovereign Citizen of Texas, that he never consented to being charged or tried in a Court of the State, and that, as a citizen on the soil and not of the State (which he says is above the land), he is not subject to the edicts or orders of the executive branch and cannot be sentenced by a jury of United States citizens. He asserts that he can be tried only by a Court of the People of Texas.

8

The courts of the State of Texas are the courts of the people of Texas. The State of Texas is an incorporeal social compact memorialized by the state constitution, by which the people formed and maintain a government. *See* Tex. Const. preamble, art. 1, §§ 1, 2, 3. The government's powers are divided into the legislative, executive, and judicial branches. *Id*. art. 2, § 1. The judicial branch includes district courts, authorized by the constitution and established by the legislature. *See id*. art 5, § 1. The 274th Judicial District, which includes Caldwell County, was created by the legislature pursuant to its delegated power to create district courts. *See id*.; Tex. Gov't Code Ann. § 24.451 (West 1988). Caldwell County is a political subdivision of the State. *See* Tex. Const. art. 9, § 1; art. 11, § 1. Jurors must be citizens of the State and the county in which the trial is held. Tex. Gov't Code Ann. § 62.102(2) (West 1998).

The district court had the power to hear this case. Appellant's assertion of immunity from administrative or executive proceedings, *see Ex parte Milligan*, 71 U.S. 2 (1866), is unavailing because he was tried in a judicial proceeding. District courts have jurisdiction over felony offenses. Tex. Code Crim. Proc. Ann. art. 4.05 (West Supp. 2003). Indecency with a child by contact is a felony offense. Tex. Pen. Code Ann. § 21.11 (West 2003). The general rule of law is that aliens are subject to the law of the territory where the crime is committed. *Mali v. Keeper of the Common Jail of Hudson County, New Jersey*, 120 U. S. 1, 11-12 (1887); *Ex parte Martinez*, 145 S.W. 959, 968 (Tex. Crim. App. 1912); *see also Scotka v. State*, 856 S.W.2d 790, 792 (Tex. App.—San Antonio 1993, no pet.). The record unequivocally shows that the trial concerned a felony offense that was committed by appellant in Caldwell County. The 274th District Court of Caldwell County thus had jurisdiction over the offense alleged. Regardless of appellant's claim or disclaimer of citizenship,

9

the court had the power to try appellant for commission of that offense committed in Caldwell County, Texas. The jury was drawn from the people of Caldwell County, Texas. Appellant was tried in the court that had jurisdiction over him and the alleged offense.

Appellant contends that no qualified judicial officer presided over his trial because Judge Charles Ramsay did not take and record the constitutionally required oaths. *See* Tex. Const. art. XVI, § 1. In the certificate attached by appellant to his motion to recuse, the Texas Secretary of State certified that he found filings (apparently the oath of office) for Charles Ramsay as district judge dated December 16, 1992, December 18, 1996, and January 12, 2001, and that he found filings (apparently of the anti-bribery oath) dated January 1, 1993, January 1, 1997, and March 5, 2001. Judge Ramsay therefore took and filed the oaths almost a year before appellant's trial in February 2002. The judge had taken and filed the requisite oaths by the time of trial.

Appellant contends that he was denied his constitutional right to the assistance of counsel. *See* U.S. Const. amend VI. "[T]he Sixth Amendment right to counsel is not forfeitable, but may only be waived by the conscious and intelligent decision of the person who holds the right." *Ex parte Gonzalez,* 945 S.W.2d 830, 835 (Tex. Crim. App. 1997) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). At a hearing on April 11, 2002, the court informed appellant of his right to be represented by counsel (appointed for him if he could not afford to hire counsel), cautioned him about other rights, and discussed the trial process and the punishment range. Appellant acknowledged all of this discussion, then the following exchange occurred:

> THE COURT:     . . . Now, you've indicated to me earlier that you would like to represent yourself?

THE DEFENDANT:  Yes, sir.

The court proceeded to caution appellant regarding the amount of procedures and laws that he would be responsible for following.  The court even compared self-representation in a criminal trial to performing a self-appendectomy or taking backroads and risking running off into a mud puddle.  Appellant was unpersuaded, however.  Appellant did accept the assistance of stand-by counsel, Douglas D. Behrendt, who commented on the record occasionally; despite not being appointed to represent appellant, Behrendt went on the record before appellant testified that he had counseled appellant that he should exercise his right not to testify.  Then, under cross-examination by the State during the trial, the following exchange occurred:

> Q. [by the State]   You had the chance to have a lawyer appointed formally in this case, is that correct?
>
> A. [by appellant]   That's correct.
>
> Q.   And you chose, "No, sir, Judge Ramsay, I want to do it myself," true?
>
> A.   Yes.

We find no denial of the right to counsel.

Appellant contends that the court erred by admitting the testimony of several witnesses in violation of the hearsay rule.[2]  Hearsay is an out-of-court statement offered for the truth

---

[2] Appellant also mentions his motion in limine, but that motion does not relate to hearsay objections.  By that motion, he asked the court to exclude all witnesses who did not testify before the grand jury.  We find no abuse in the court's denial of that motion.

11

of the matter asserted. Tex. R. Evid. 801. It is generally not admissible. *See id*. 802. However, the first adult to whom a child makes an outcry regarding physical or sexual abuse may testify to that outcry as an exception to the hearsay rule. Tex. Code Crim. Proc. Ann. art. 38.072, § 2 (West Supp. 2003). The statute has been construed to apply to the first adult to whom the child makes a statement that in some discernible manner describes the alleged offense. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). A trial court has broad discretion in determining which of several witnesses qualifies as the outcry witness. *Id*. at 92. We have held that, if the child's first report is too vague or if the first adult did not hear, remember, or understand what the child was saying, then a report to a subsequent adult may be considered the outcry. *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd).

Appellant filed a motion to suppress the testimony of CPS employees Hopkins, Burke, and Leslie Ontiveros, contending that their testimony would be hearsay and that they were not outcry witnesses. The court did not overrule that motion, but reserved consideration for when the individuals testified. During trial, Burke testified about procedures surrounding the videotaping of statements from appellant's children and generally about behavioral manifestations of child abuse. Ontiveros testified about her efforts as a supervisor who spoke Spanish to get Mrs. Alvarez to bring S.A. into their office or to give permission for them to talk to S.A. Neither testified about the outcry. Accordingly, we consider the outcry witness issue only with respect to Hopkins.

Appellant complains that the court erred by failing to hold a hearing regarding the proper outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2). Appellant waived the right to complain about the failure to hold a hearing by neither requesting a hearing nor objecting to

12

the failure to hold a hearing. *See* Tex. R. App. P. 33.1(a); *Cates v. State*, 72 S.W.3d 681, 698 (Tex. App.—Tyler 2001, pet. ref'd).

Appellant contends that his wife is the first adult to whom S.A. reported the incident, and that S.A.'s subsequent report to Hopkins thus does not come within the outcry exception to the hearsay rule. Mrs. Alvarez, however, said that S.A. reported only that appellant pushed her in the chest. Mrs. Alvarez denied that S.A. reported any sexual abuse, genital touching, or, drawing an inference from her testimony, touching of S.A.'s breast underneath her bra. The court did not abuse its discretion by determining that Mrs. Alvarez was not the outcry witness. *See Foreman*, 995 S.W.2d at 859. Thus, CPS investigator Hopkins's testimony is within the outcry exception to the hearsay rule.

Appellant complains on appeal of the admission of non-outcry hearsay testimony by other witnesses. His motion to suppress, however, did not mention any witnesses other than those discussed above. He does not point to portions of the record in which he objected to the testimony of other witnesses on the basis of hearsay. Our review of the record shows that the court overruled appellant's hearsay objection when therapist Johnson was testifying about S.A. telling him her mother asked her not to testify; the court overruled this based on the State's explanation that the statements were not hearsay because they were made as part of S.A.'s therapy. *See* Tex. R. Evid. 803(4). It is not entirely clear that the State elicited sufficient evidence to place Johnson's testimony within the medical diagnosis exception to hearsay. *See Moore v. State*, 82 S.W.3d 399, 405 (Tex. App.—Austin 2002, pet. ref'd). But any error in the admission of this testimony was harmless because S.A. herself had already testified without objection that her mother asked her not to testify

13

against appellant. *See Leday v. State*, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998) (party who objects to some evidence but fails to object to other, substantially similar evidence waives any error in admission of objected-to evidence). Johnson's testimony does not add any real weight to S.A.'s testimony because he did not hear the comment from S.A.'s mother; he testified only that S.A. reported to him that her mother made the statement. The jury also heard S.A.'s mother deny making the statement. Overruling of this objection affected neither constitutional nor substantial rights, and thus is not grounds for reversal. *See* Tex. R. App. P. 44.2.

Appellant argues that the State failed to show intent. In order to convict appellant of indecency with a child by contact, the jury must have found beyond a reasonable doubt that appellant touched S.A.'s breast and vagina with the intent to arouse or gratify the sexual desire of any person. *See* Tex. Pen. Code Ann. §§ 21.01(2), 21.11(a)(1) (West 2003). The instructions in this case specified that the relevant desire was appellant's. The sufficiency is a question of law. *See Urbano v. State*, 837 S.W.2d 114, 115 (Tex. Crim. App. 1992). The specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or all the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Santos v. State*, 961 S.W.2d 304, 308 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Urbano*, 837 S.W.2d at 115-116; *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd).

Appellant contends that the evidence does not show the requisite intent because S.A. testified that he did not get an erection or ejaculate. No such physical response by the defendant is

a required element of the offense. *See Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd). The critical issue is whether appellant *intended* the contact to arouse or satisfy his desire, not whether it did so in a physically manifest way. The jury was entitled to infer from the evidence of the incident, of appellant's insistence on secrecy afterward, and of S.A.'s reaction to it that appellant made the contact with the requisite intent.

Appellant contends that testimony by S.A. and E.A. was not credible. Credibility is an issue for the jury. See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Appellant points out discrepancies in their testimony. The discrepancies concern side issues such as whether E.A. overheard his mother reporting the incident to a neighbor. The jury was better situated to decide whether to believe the children's testimony. The same is true regarding refinements in their stories between the videotape made shortly after the incident and the trial about two years later. Appellant asserts that S.A. did not know the names of relevant body parts on the videotape, but used them at the trial. S.A. may not have known the names of the body parts, but she did describe them on the videotape with sufficient clarity that the jury could decide whether her use of proper nomenclature at the trial represented education or improper coaching. Sufficient evidence supported the jury's decision to find the requisite intent.

Finally, appellant contends that his sixteen-year prison term is cruel and unusual punishment. He argues that he is being unfairly punished for an unsubstantiated link to the Republic of Texas movement. The State devoted time to appellant's non-partisan political beliefs, particularly as they are expressed in affidavits signed by appellant and Mrs. Alvarez disavowing the applicability of state law to themselves. Legitimate purposes for this strategy appeared two-fold: (1) to show

15

appellant's lack of regard for the law, and (2) to undercut the credibility of Mrs. Alvarez by showing that appellant had overborne her will by convincing her to sign the affidavit despite her struggle to explain its substance—thus indicating that he could also overbear her will to believe her daughter. Appellant himself proves the appropriateness of the State's strategy by reurging on appeal the inapplicability of Texas laws and courts to his person.

Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *See Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Cooks v. State*, 5 S.W.3d 292, 298-99 (Tex. App.—Houston [14th Dist.] 1999, no pet). The United States Supreme Court has recognized a narrow exception for sentences that, despite being statutorily permissible, are so disproportionate to the offense committed that they run afoul of the prohibition of cruel and unusual punishment. *Solem v. Helm*, 463 U.S. 277, 290 (1983). First, we compare the gravity of the offense with the severity of the sentence. *Harmelin v. Michigan*, 501 U.S. 957, 1004-05 (1991).[3] Only if the sentence is grossly disproportionate do we consider the sentences received for similar crimes in the jurisdiction and the sentences for similar crimes in other jurisdictions to determine the constitutionality of the sentence. *See id*. Appellant's sixteen-year sentence is within the punishment range of two to twenty years in prison for this offense. *See* Tex. Pen. Code Ann. §§ 12.33, 21.11(c) (West 2003).

---

[3] A two-justice plurality in *Harmelin* concluded that *Solem* is wrong and that no proportionality test exists outside of death cases, *see Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), but a three-justice plurality applied the *Solem* test. *See id*. at 1004-05 (1991) (Kennedy, J., concurring). Three dissenting justices expressly argued to leave *Solem* intact. *Id*. at 1021 (White, J., dissenting). We conclude that *Solem* is still in place at least to the extent acknowledged by the concurring opinion. *See Harmelin*, 501 U.S. at 1004-05.

Appellant argues that the punishment given him is cruel and unusual based on the nature of his particular action, not that the punishment range is disproportionate compared to other types of offenses or punishments in other states. He argues that he is being punished severely for touching his daughter on the chest once. His argument, however, depends on his characterization of the event as a brief touch incidental to simulated wrestling play. He ignores his daughter's testimony that he deliberately reached under her shirt and under her bra to caress her breast, and under her panties to brush her vagina. He ignores the fact that, by its verdict, the jury found that he did at least one of these actions with the intent to arouse or gratify his sexual desire. The court may also have been influenced by evidence that afterward appellant warned and pressured his daughter to remain silent about the event and that he continues to deny committing the offense.

We conclude that the punishment is within constitutional limits.

### CONCLUSION

Having resolved all issues raised on appeal in favor of the judgment, we affirm the judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   September 11, 2003

Do Not Publish