Kevin Carlton COOKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–01193–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 30, 1999.

Rick Davis, Bryan, for appellant.

Margaret Lalk, Bryan, for appellee.

Panel consists of Justices YATES, FOWLER and LEE.[1]

## OPINION

FOWLER, Justice.

Over his plea of not guilty, a jury convicted appellant, Kevin Carlton Cooks, of three counts of manslaughter. *See* TEX. PEN.CODE ANN. § 19.04 (Vernon 1994). The jury assessed punishment at eighteen years imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine for each of the three counts of manslaughter. Appellant appeals his conviction on six points of error. We affirm the trial court judgment.

## BACKGROUND FACTS

On October 19, 1996, around nine o'clock at night, Tenisha Ray was driving her Hyundai Elantra with her mother, Brenda Johnson, in the front passenger seat, and her father, Rickey Johnson, her sister, Chrystal, and brother, Rickey, Jr., in the back seat. Tenisha stopped at a stop sign at the intersection of Woodville Road and Texas Avenue. She planned to make a left onto the southbound side of Texas Avenue. So, she waited at the stop sign until a car traveling southbound on Texas Avenue passed, looked both ways, and, since the only car she saw was some distance away on the northbound side of Texas avenue, she proceeded to make her left turn. However, as she pulled onto Texas avenue, her father said "watch it" just before the northbound car slammed into her car, splitting it into two pieces and killing her father, her sister, and her brother. The back half of the car where Tenisha's father and two younger siblings were riding was sheared away from the front half and thrown from the point of impact into a

1. Senior Justice Norman Lee sitting by as- signment.

ditch by the side of the road where it bounced off two trees before coming to a rest.

The car that slammed into Tenisha's Hyundai was a Chevrolet Impala driven by the appellant. Two witnesses in other cars testified that appellant passed them immediately before the accident and that he was driving at speeds close to a hundred miles an hour. One of these witnesses said that his car was going about 50 miles an hour and "he passed us like we were setting [sic] still." The accident reconstruction based on the skid marks showed that, even after splitting the Hyundai into two pieces, appellant's car was still traveling seventy miles an hour. Based on this evidence, the jury convicted appellant of three counts of manslaughter. Appellant now appeals his conviction on six points of error.

## DISCUSSION AND HOLDINGS

■ In his first point of error, appellant contends the evidence was legally insufficient to support his conviction. Appellant argues that there is no evidence that rebuts the presumption that Tenisha failed to yield the right of way, and, therefore, the evidence is legally insufficient to show causation. When reviewing the legal sufficiency of the evidence, this court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App. 1993). This same standard of review applies to cases involving both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). On appeal, this court does not re-evaluate the weight and credibility of the evidence, but we consider only whether the jury reached a rational decision. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim.App.1993).

■ As to causation, we believe sufficient evidence existed for the jury to have found appellant's reckless speeding caused the accident. The jury was charged on criminal responsibility as follows: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." There was evidence that Tenisha saw appellant's lights "farther down the road" from where she was but determined that she had time to turn left onto the road. A police officer estimated that appellant was probably two football fields away from Tenisha when she pulled out. He stated that, normally, a driver would expect to be able to cross a street if an oncoming car were that distance from the driver. However, at appellant's rate of speed, it would have taken him less than five seconds to travel this distance. The jury also was informed that the speed limit changed from 50 to 55 miles an hour shortly before the intersection where the accident occurred; the area was partly residential, partly commercial. In addition, police officers testified that driving 70 miles an hour or more in an area that was partly residential and partly business would create a substantial and unjustifiable risk that serious injury would result.

In spite of this evidence, appellant argues that Tenisha's failure to yield right of way while making a left hand turn was the cause of the accident. Appellant elicited testimony on this point at trial. However, the record does not reflect that Tenisha was given a traffic citation for the offense of failure to yield right of way. The record also shows that, while the investigating officer's initial report listed Ray as a contributing cause of the accident, upon further investigation, the officer found that appellant's speed caused the accident. Based on the evidence, it would be reasonable for the jury to conclude that Tenisha's father and siblings would not have been

killed but for the fact that appellant was traveling 100 miles an hour, which Tenisha could not reasonably anticipate as she pulled onto the road.

In short, the record contains sufficient evidence for the jury to have found that appellant's reckless speeding caused the accident.

■ As to the required mental state, appellant contends that there is no evidence that he was aware of the risk of driving at such a high rate of speed. To be guilty of manslaughter, a person has to recklessly cause the death of another individual. *See* TEX. PEN.CODE ANN. § 19.04 (Vernon 1994). In this case the jury charge defined reckless as follows: "A person acts "recklessly", [sic] or is "reckless," with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur." Appellant argues that the evidence is insufficient to show that he was aware of the risk of driving at such a high rate of speed. We disagree.

■ Appellant was a licensed driver. He lived in Bryan. The posted speed limit was 50, then 55 miles an hour shortly before the intersection where the accident occurred. It is universally acknowledged that speed kills. This lesson is taught in every driver's education and safety class. When appellant's car hit Tenisha's, he was going so fast that her car was split in half. Tenisha's father was thrown 150 feet down the road. The force from the collision and from their bodies landing on the pavement broke almost every bone in Tenisha's father's body, severed her younger brother's skull from his spine, and caused massive skull injuries and massive internal injuries to her younger sister, including puncturing her heart. Experts estimated that, even after the impact, that is, after appellant had already split Tenisha's car in half, appellant's car was still traveling 70 miles an hour.

There was no evidence that appellant was not aware of the risk of driving close to a hundred miles an hour in a fifty-five mile an hour zone. The evidence we have "... summarized shows acts which reveal conscious risk creation—a conscious disregard for the risk involved in driving in the manner in which appellant was driving." *See Aliff v. State,* 627 S.W.2d 166, 172 (Tex.Crim.App.1982). After reviewing the record, we find sufficient evidence to support the jury's verdict, and we overrule appellant's first point of error.

■ In his second point of error, appellant contends the evidence is factually insufficient to support his conviction. In conducting a factual sufficiency review, this court must view all the evidence without the prism of in the light most favorable to the prosecution and must set aside the verdict only if it is so contrary to the weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

■ We have already reviewed most of the evidence under our discussion of legal sufficiency. However, there is some additional evidence that tends to favor appellant. On cross-examination, appellant's counsel elicited testimony from Tenisha that, in hindsight, she probably would not pull out in front of appellant's car, and that she would wait to turn onto the road until she could see no cars. Counsel also elicited testimony that the officer on the scene originally attributed the cause of the accident to Tenisha. However, after the accident was studied further, and officers determined that appellant was traveling at a high speed, and after having discussions with other officers, the officer changed the report to reflect that appellant caused the wreck. Finally, at the end of the trial, one of appellant's brothers testified that Tenisha said that, as she was pulling onto the road, her father told her not to go because she did not have time to make it.

As we discussed above, we have already held that the evidence is legally sufficient

to support the jury verdict. After having reviewed all of the evidence, both evidence supportive of the judgment, and contrary to it, we do not find the verdict so contrary to the weight of the evidence as to be clearly wrong and unjust. In fact, we find just the opposite. Appellant's second point of error is overruled.

■ In his third point of error, appellant contends the trial court erred by failing to charge the jury on the lesser included offense of criminally negligent homicide. A trial court is required to submit a jury charge on a lesser included offense only if both prongs of a two pronged test are satisfied. *See Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App. 1998). The first step of this test is to decide whether the offense comes within Article 37.09 of the Texas Code of Criminal Procedure. *See id.* "We usually say at this step that 'the lesser included offense must be included within the proof necessary to establish the offense charged.'" *Id.* The second step of this test requires us to evaluate the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *See id.*

■ In this case neither party disputes that criminally negligent homicide is a lesser included offense of manslaughter. *See Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Thus, the first prong of the two prong test to determine whether a jury instruction on lesser included offense should be given to the jury has been satisfied. The second prong of the test can be satisfied if there is some evidence that would allow a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. The definition of "criminal negligence" is that a person ought to be aware of a substantial and unjustifiable risk that the result will occur. *See* TEX. PEN.CODE ANN. § 6.03 (Vernon 1994). For a jury to receive an instruction on criminal negligence, there must be some evidence that the appellant

is unaware of the risk of his conduct. In this cause, we find no evidence that appellant was unaware of the risk involved. Instead, the evidence only shows a conscious disregard of the risk. *See Aliff,* 627 S.W.2d at 172; *Rathmell v. State,* 653 S.W.2d 498, 503 (Tex.App.—Corpus Christi 1983, pet. ref'd). Thus, the trial court did not err when it refused to include a jury instruction on criminal negligence.

■ In his fourth point of error, appellant contends his trial counsel was ineffective. For counsel to be ineffective at either the guilt/innocence or punishment phase of trial, the attorney's actions must meet the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requiring that a defendant show the following two things: (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) the probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Hernandez v. State,* 988 S.W.2d 770, 771–72 (Tex.Crim.App.1999) (overruling *Ex parte Cruz,* 739 S.W.2d 53 (Tex.Crim.App.1987) and *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App. 1980) and holding that the court previously had misinterpreted *Strickland* when it decided that different standards should apply to allegations of ineffective assistance of counsel at the guilt/innocence and punishment phases). In looking at these requirements, however, a court also is to keep in mind that the right to counsel does not guarantee an error-free counsel or counsel whose competency is judged by hindsight. *See Hernandez v. State,* 726 S.W.2d 53, 58 (Tex.Crim.App.1986).

In this cause, appellant argues that his trial counsel was ineffective for failing to object during the punishment stage to comments made by a police officer. During punishment, the State called Officer Robert Olsen to the stand. Olsen testified at both the guilt/innocence phase and at

the punishment phase. The record indicates that Olsen drove appellant to the hospital, obtained his consent for a blood sample, stood by while that sample was taken, obtained Tenisha's consent for a blood test, waited for that sample, and then drove both blood samples to the police station and placed them in a locked evidence locker. At punishment, Olsen returned to the stand and testified that at no time while he was with the appellant did the appellant inquire as to the condition of the survivors of the wreck. He also testified that the during the preliminary investigation the only question appellant asked him, after appellant was given the *Miranda* warnings, was if he (appellant) was going to get in any trouble for the accident. The record does not contain enough facts for us to determine whether appellant was in custody when he went to the hospital. However, he was given his Miranda warnings, and we will assume that he was in custody and that the Fifth Amendment right not to incriminate himself had attached. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

 Appellant argues that the testimony by the police officer should have been objected to on the grounds that they were an improper comment on appellant's Fifth Amendment right against self-incrimination. We disagree that all of the testimony was objectionable. First, appellant's spontaneous inquiry about whether he would get into trouble for the accident was not protected by the Fifth Amendment against self-incrimination. The Fifth Amendment protects, among other things, statements that are the result of custodial *interrogation. See Galloway v. State,* 778 S.W.2d 110, 112 (Tex.App.—Houston [14th Dist.] 1984, no pet.). Officer Olsen did not solicit the comment, or do anything designed to elicit a response. *Id.* Thus, here, there was no interrogation, and, therefore, no violation. *Id.*

Having addressed appellant's unsolicited comment, we now turn to the officer's testimony that the appellant showed no remorse at the hospital. This might not be a comment on appellant's post arrest silence, but because it is a close issue we will apply the second prong of *Strickland* to determine if the result would have been different, but for counsel's alleged error.

 We believe that counsel's failure to object to Olsen's testimony about the appellant's apparent lack of remorse did not produce a different result. Appellant presented evidence that he was remorseful. In rebuttal to this evidence, the State elicited Olsen's testimony. During argument, appellant's trial attorney argued that it would be appropriate to assume that appellant "feels a great sense of loss." The State, however, never commented on Olsen's testimony or on appellant's lack of remorse. The State only stated that "being sorry now is not enough."

 The record leads us to conclude that the failure to object did not lead to a different result. Although the State elicited the evidence, the State did not emphasize the testimony, or even refer to it specifically in closing. As we noted earlier, the right to effective counsel is not the right to error-free counsel. *See Hernandez,* 726 S.W.2d at 58. An isolated failure to object to improper evidence does not necessarily constitute ineffective assistance of counsel. *See Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). We, therefore, overrule appellant's fourth point of error.

 In his fifth point of error, appellant contends his sentence violated the United States Constitution's Eight Amendment ban against cruel and unusual punishment. Appellant argues that eighteen years and a $10,000 fine for each count of manslaughter is cruel and unusual punishment. In Texas, where the punishment assessed by the judge or the jury was within statutorily prescribed limits, it is not cruel and unusual punishment. *See McNew v. State,* 608 S.W.2d 166, 174 (Tex. Crim.App. [Panel Op.] 1978) (citing *Samuel v. State,* 477 S.W.2d 611, 614 (Tex.Crim.

App.1972)); *Benjamin v. State,* 874 S.W.2d 132, 135 (Tex.App.—Houston [14ᵗʰ Dist.] 1994, no pet.); *Servin v. State,* 745 S.W.2d 40, 41–42 (Tex.App.—Houston [14ᵗʰ Dist.] 1987, no pet.). We do not find any compelling reason in appellant's argument to require us to reverse his sentence. According to the Texas Penal Code, manslaughter is a second degree felony. *See* TEX. PENAL CODE ANN. § 19.04 (Vernon 1994). "An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the institutional division for any term *of not more than 20 years or less than 2 years." See id.* § 12.33 (emphasis added). In addition, this statute stated that in addition to prison, an individual guilty of a second degree should not punished by a fine over $10,000. *See id.* Because the trial court sentenced appellant to a punishment below the maximum punishment and well within the statutorily prescribed limits, the punishment was not cruel and unusual. We, therefore, overrule appellant's fifth point of error.

In his sixth point of error, appellant contends that his trial counsel was ineffective for failing to request an instruction based on the Texas Transportation Code about Ray's failure to yield the right of way. In his multifarious point of error, appellant argues that 1) his trial counsel should have requested a charge based on the Texas Transportation Code which stated that Ray failed to yield right of way to appellant; 2) appellant's trial counsel was ineffective for failing to make such a request; and 3) the omission of such an instruction is such an egregious error that requires reversal. However, appellant's brief fails to include any proposed jury charge and fails to cite any case law. For these reasons, appellant's point of error is inadequately briefed and presents nothing for review. *See* TEX.R.APP. P. 38.1.

We overrule appellant's sixth point of error and affirm the trial court judgment.