COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-108-CR

 

 

SARAH
VICTORIA JARVIS                                                    APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 213TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Sarah Victoria Jarvis
of criminally negligent homicide, and it assessed her punishment at two years=
confinement but recommended community supervision.[2]  The trial court sentenced Jarvis accordingly,
suspended imposition of her sentence, and placed her on community supervision
for five years.  In one point, Jarvis
argues that the evidence is legally insufficient to support her conviction for
criminally negligent homicide.  We will
affirm.

In the early morning hours of May 28, 2006, at
approximately 3:00 a.m., Jarvis was driving on Highway 183 when she slammed her
vehicle into the back of a vehicle being driven by Chris Britton.  The collision caused Britton=s
vehicle to spin around and to tumble over a guardrail and concrete wall and
down an embankment to a dried-out creek bed. 
Megan Howard, a passenger in Britton=s
vehicle, was ejected from the vehicle and killed.[3]








In challenging the legal sufficiency of the
evidence to support her conviction, Jarvis argues that A[t]his
was an accident based on speeding violations of all the parties and not a
criminal act based on [her] criminal negligence@
because, other than excessive speed, no other facts were presented at trialCsuch as
alcohol or drugsCthat constituted Acontributing
factors@ to the
accident.  Thus, according to Jarvis,
this is not a case of criminal negligence because the only basis for her
conviction is evidence of excessive speed, which is insufficient in and of
itself to support a conviction for criminally negligent homicide.[4]








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
This standard gives full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778. 
The trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

A person commits an offense if he causes the
death of an individual by criminal negligence. 
Tex. Penal Code Ann. ' 19.05(a)
(Vernon 2003).  The penal code defines
criminal negligence as follows:

A person acts with
criminal negligence, or is criminally negligent, with respect to circumstances
surrounding his conduct or the result of his conduct when he ought to be aware
of a substantial and unjustifiable risk that the circumstances exist or the
result will occur.  The risk must be of
such a nature and degree that the failure to perceive it constitutes a gross deviation
from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s standpoint.

 

Id. ' 6.03(d)
(Vernon 2003).  AIn
short, it is the >failure to perceive= the
risk of a resulting death which must rise to the level of a >gross
deviation= from an ordinary standard of
care.@  Graham v. State, 657 S.W.2d 99, 101
(Tex. Crim. App. 1983).  Judge Cochran
explained the difference between criminal negligence and civil negligence:








Civil or Asimple@ negligence Ameans failure to use
ordinary care, that is, failing to do that which a person of ordinary prudence
would have done under the same or similar circumstances or doing that which a
person of ordinary prudence would not have done under the same or similar
circumstances. . . .@

 

Criminal negligence, however, requires a significantly greater degree
of deviation from this standard of care before a person may be held criminally
liable.  It must be a Agross@ or extreme deviation
from that standard.  And it is measured
solely by the degree of negligence, not any element of actual awareness.  Conduct that constitutes criminal negligence
involves a greater risk of harm to others, without any compensating social
utility, than does simple negligence.  A
person may be found criminally negligent when he inadvertently creates a
substantial and unjustifiable risk of which he ought to be (but is not) aware.  And a jury must evaluate the defendant=s failure of perception
and determine whether, under all the circumstances, it was serious enough to be
condemned under the criminal law.

 

Tello v. State, 180 S.W.3d 150, 158B59 (Tex.
Crim. App. 2005) (Cochran, J., concurring) (citations omitted).

In this case, count two of the indictment alleged
the offense of criminally negligent homicide as follows:








And it is further presented
in and to said court that the defendant in the County of Tarrant and State
aforesaid on or about the 28th day of May, 2006, did then and there by criminal
negligence, to‑wit:  by failing to
control her motor vehicle and/or by failing to keep a proper lookout for
another motor vehicle, and/or by operating the motor vehicle above the posted
speed limit, and/or by driving a motor vehicle while sleepy, and/or by failing
to stay awake while operating a motor vehicle on a public roadway, and/or by
failing to make a safe lane change while operating a motor vehicle on a public
roadway laned for traffic, and/or by failing to maintain an assured clear
distance between the motor vehicle she is operating and other motor vehicles on
the same public roadway, cause the death of an individual, Megan Howard, by
driving said motor vehicle into and against a motor vehicle in which Megan
Howard was a passenger[.]

 

The evidence demonstrates that the portion of
Highway 183 where the accident occurred is a public roadway, laned for traffic,
with three westbound lanes and three eastbound lanes.  The posted speed limit is sixty miles per
hour.

Britton described the traffic on Highway 183 as Afairly
light@ on the
night of the incident.  He testified that
he was driving in the center lane between sixty and sixty-five miles per hour
when Jarvis=s vehicle collided with the back
of his vehicle.








Deandra King witnessed the accident and testified
that Britton=s vehicle, which was in front of
the vehicle King was in, was traveling fifty-five or sixty miles per hour.  King testified that Jarvis=s
vehicle passed him going Aat least 100 miles per hour@ just
before it struck Britton=s vehicle.  Defense counsel questioned the preciseness of
King=s
estimation of Jarvis=s speed, but King responded, AIt is
not about thinking or guessing; it is about what I know.  She was going a hundred miles an hour, that
driver was.@ 
King also reasoned, AWell,
when you have a car going so fast you have the other car [the car King was
traveling in] . . . shake, they are going to go at least a hundred miles
an hour.@
[Emphasis added.]  After the accident,
King exited the vehicle he was in and spoke with Jarvis, who asked what had
happened and told King that she thought she had fallen asleep.

Two expert witnesses testified for the
State.  Ray Wangler testified that he
calculated the speed of Jarvis=s
vehicle when it contacted Britton=s vehicle
at between 104 and 109 miles per hour.[5]  Timothy Lovett testified that according to
his calculations, Jarvis=s vehicle was traveling between
99 and 101 miles per hour when it contacted Britton=s
vehicle.








Ray Wilson, a detective with the Fort Worth
Police Department, was the primary investigator assigned to the incident.  Detective Wilson opined that Jarvis failed to
maintain an assured clear distance between her vehicle and the other vehicles
in the same roadway, that Jarvis operated her vehicle over the posted speed
limit, and that Jarvis failed to keep a proper lookout for other motor vehicles
on the roadway and not come into contact with them.  Detective Wangler opined that Jarvis was not able
to make a safe lane change, operated her vehicle above the posted speed limit,
failed to maintain a proper lookout, and failed to maintain an assured clear
distance between her car and other cars on the roadway.








Contrary to Jarvis=s
argument, this is not a case of mere civil negligence resulting from her only
driving over the posted speed limit. 
Rather, to use Jarvis=s lingo,
there are other Acontributing factors.@  Specifically, the jury could have rationally
found that Jarvis should have perceived, but failed to perceive, a substantial
and unjustifiable risk of death from her conduct of driving her vehicle at over
100 miles per hour at 3:00 a.m. on a public roadway with a posted speed
limit of only 60 miles per hour while sleepy, while failing to stay awake,
while failing to keep a proper lookout for another motor vehicle, or while
failing to maintain an assured clear distance between her vehicle and other
vehicles on the roadway.  See Tex.
Penal Code Ann. ' 6.03(d).  The jury also could have rationally found
that Jarvis=s failure to perceive this
substantial and unjustifiable risk of death was a gross deviation from the
standard of care that an ordinary person would exercise under the
circumstances.  See id.; Graham,
657 S.W.2d at 101 (reasoning that driver=s
failure to perceive risk of death from acts of speeding, racing, and ignoring a
red traffic control signal while approaching an intersection was clearly a
gross deviation from the ordinary standard of care); see also Cooks v. State,
5 S.W.3d 292, 295B96 (Tex. App.CHouston
[14th Dist.] 1999, no pet.) (affirming manslaughter conviction of appellant who
drove vehicle 100 miles per hour in a 55 miles-per-hour zone and stating that A[i]t is
universally acknowledged that speed kills@).  Thus, the State proved that Jarvis=s
failure to perceive a substantial risk of death from her conduct grossly
deviated from an ordinary standard of care. 
See Graham, 657 S.W.2d at 101. 
Viewing all the evidence in the light most favorable to the prosecution
and giving full play to the responsibility of the jury to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts, we hold that the evidence is legally sufficient
to support Jarvis=s conviction for criminally
negligent homicide.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  Accordingly, we overrule Jarvis=s only
point and affirm the trial court=s
judgment.

 

BILL
MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 11, 2010











[1]See Tex. R. App. P. 47.4.





[2]The jury acquitted Jarvis
of manslaughter and aggravated assault with a deadly weapon.





[3]A paramedic who was
dispatched to the scene of the incident testified that Howard had injuries that
were Aincompatible with life@ and was dead.  According to the medical examiner who
performed her autopsy, Howard=s brain was badly lacerated and fragmented.





[4]Jarvis preserved this
issue for appellate review.





[5]In an affidavit
accompanying a search warrant for Jarvis=s vehicle, Detective Wangler calculated that the
speed of Jarvis=s vehicle at the time of
the collision was ninety miles per hour, but he arrived at this figure by using
a Alow end@ book value (.8) for a
particular variable (drag coefficient). 
After Detective Wangler Askid tested@ the section of the pavement where the accident
occurred, he came up with a drag coefficient of .92, which he used to calculate
the minimum speed of 104 miles per hour.