

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-108-CR

SARAH VICTORIA JARVIS                                           APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Sarah Victoria Jarvis of criminally negligent homicide, and it assessed her punishment at two years' confinement but recommended community supervision.[2] The trial court sentenced Jarvis accordingly, suspended imposition of her sentence, and placed her on

---

[1] *See* Tex. R. App. P. 47.4.

[2] The jury acquitted Jarvis of manslaughter and aggravated assault with a deadly weapon.

community supervision for five years. In one point, Jarvis argues that the evidence is legally insufficient to support her conviction for criminally negligent homicide. We will affirm.

In the early morning hours of May 28, 2006, at approximately 3:00 a.m., Jarvis was driving on Highway 183 when she slammed her vehicle into the back of a vehicle being driven by Chris Britton. The collision caused Britton's vehicle to spin around and to tumble over a guardrail and concrete wall and down an embankment to a dried-out creek bed. Megan Howard, a passenger in Britton's vehicle, was ejected from the vehicle and killed.[3]

In challenging the legal sufficiency of the evidence to support her conviction, Jarvis argues that "[t]his was an accident based on speeding violations of all the parties and not a criminal act based on [her] criminal negligence" because, other than excessive speed, no other facts were presented at trial—such as alcohol or drugs—that constituted "contributing factors" to the accident. Thus, according to Jarvis, this is not a case of criminal negligence because the only basis for her conviction is evidence of

---

[3] A paramedic who was dispatched to the scene of the incident testified that Howard had injuries that were "incompatible with life" and was dead. According to the medical examiner who performed her autopsy, Howard's brain was badly lacerated and fragmented.

2

excessive speed, which is insufficient in and of itself to support a conviction for criminally negligent homicide.[4]

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we

---

[4] ... Jarvis preserved this issue for appellate review.

"determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

A person commits an offense if he causes the death of an individual by criminal negligence. Tex. Penal Code Ann. § 19.05(a) (Vernon 2003). The penal code defines criminal negligence as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id*. § 6.03(d) (Vernon 2003). "In short, it is the 'failure to perceive' the risk of a resulting death which must rise to the level of a 'gross deviation' from an ordinary standard of care." *Graham v. State*, 657 S.W.2d 99, 101 (Tex. Crim. App. 1983). Judge Cochran explained the difference between criminal negligence and civil negligence:

> Civil or "simple" negligence "means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence

4

would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. . . ."

Criminal negligence, however, requires a significantly greater degree of deviation from this standard of care before a person may be held criminally liable. It must be a "gross" or extreme deviation from that standard. And it is measured solely by the degree of negligence, not any element of actual awareness. Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence. A person may be found criminally negligent when he inadvertently creates a substantial and unjustifiable risk of which he ought to be (but is not) aware. And a jury must evaluate the defendant's failure of perception and determine whether, under all the circumstances, it was serious enough to be condemned under the criminal law.

*Tello v. State*, 180 S.W.3d 150, 158–59 (Tex. Crim. App. 2005) (Cochran, J., concurring) (citations omitted).

In this case, count two of the indictment alleged the offense of criminally negligent homicide as follows:

And it is further presented in and to said court that the defendant in the County of Tarrant and State aforesaid on or about the 28th day of May, 2006, did then and there by criminal negligence, to-wit: by failing to control her motor vehicle and/or by failing to keep a proper lookout for another motor vehicle, and/or by operating the motor vehicle above the posted speed limit, and/or by driving a motor vehicle while sleepy, and/or by failing to stay awake while operating a motor vehicle on a public roadway, and/or by failing to make a safe lane change while operating a motor vehicle on a public roadway laned for traffic, and/or by failing to maintain an assured clear distance between the motor vehicle she is operating and other motor vehicles on the same public roadway, cause the death of an individual, Megan Howard, by driving said

5

motor vehicle into and against a motor vehicle in which Megan Howard was a passenger[.]

The evidence demonstrates that the portion of Highway 183 where the accident occurred is a public roadway, laned for traffic, with three westbound lanes and three eastbound lanes. The posted speed limit is sixty miles per hour.

Britton described the traffic on Highway 183 as "fairly light" on the night of the incident. He testified that he was driving in the center lane between sixty and sixty-five miles per hour when Jarvis's vehicle collided with the back of his vehicle.

Deandra King witnessed the accident and testified that Britton's vehicle, which was in front of the vehicle King was in, was traveling fifty-five or sixty miles per hour. King testified that Jarvis's vehicle passed him going "at least 100 miles per hour" just before it struck Britton's vehicle. Defense counsel questioned the preciseness of King's estimation of Jarvis's speed, but King responded, "It is not about thinking or guessing; it is about what I know. She was going a hundred miles an hour, that driver was." King also reasoned, "Well, when you have a car going so fast you have the other car [the car King was traveling in] . . . *shake*, they are going to go at least a hundred miles an hour." [Emphasis added.] After the accident, King exited the vehicle he was in

6

and spoke with Jarvis, who asked what had happened and told King that she thought she had fallen asleep.

Two expert witnesses testified for the State. Ray Wangler testified that he calculated the speed of Jarvis's vehicle when it contacted Britton's vehicle at between 104 and 109 miles per hour.[5] Timothy Lovett testified that according to his calculations, Jarvis's vehicle was traveling between 99 and 101 miles per hour when it contacted Britton's vehicle.

Ray Wilson, a detective with the Fort Worth Police Department, was the primary investigator assigned to the incident. Detective Wilson opined that Jarvis failed to maintain an assured clear distance between her vehicle and the other vehicles in the same roadway, that Jarvis operated her vehicle over the posted speed limit, and that Jarvis failed to keep a proper lookout for other motor vehicles on the roadway and not come into contact with them. Detective Wangler opined that Jarvis was not able to make a safe lane change, operated her vehicle above the posted speed limit, failed to maintain a proper

---

[5] In an affidavit accompanying a search warrant for Jarvis's vehicle, Detective Wangler calculated that the speed of Jarvis's vehicle at the time of the collision was ninety miles per hour, but he arrived at this figure by using a "low end" book value (.8) for a particular variable (drag coefficient). After Detective Wangler "skid tested" the section of the pavement where the accident occurred, he came up with a drag coefficient of .92, which he used to calculate the minimum speed of 104 miles per hour.

lookout, and failed to maintain an assured clear distance between her car and other cars on the roadway.

Contrary to Jarvis's argument, this is not a case of mere civil negligence resulting from her *only* driving over the posted speed limit. Rather, to use Jarvis's lingo, there are other "contributing factors." Specifically, the jury could have rationally found that Jarvis should have perceived, but failed to perceive, a substantial and unjustifiable risk of death from her conduct of driving her vehicle at *over* 100 miles per hour at 3:00 a.m. on a public roadway with a posted speed limit of only 60 miles per hour while sleepy, while failing to stay awake, while failing to keep a proper lookout for another motor vehicle, or while failing to maintain an assured clear distance between her vehicle and other vehicles on the roadway. *See* Tex. Penal Code Ann. § 6.03(d). The jury also could have rationally found that Jarvis's failure to perceive this substantial and unjustifiable risk of death was a gross deviation from the standard of care that an ordinary person would exercise under the circumstances. *See id.*; *Graham*, 657 S.W.2d at 101 (reasoning that driver's failure to perceive risk of death from acts of speeding, racing, and ignoring a red traffic control signal while approaching an intersection was clearly a gross deviation from the ordinary standard of care); *see also Cooks v. State*, 5 S.W.3d 292, 295–96 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (affirming manslaughter conviction

8

of appellant who drove vehicle 100 miles per hour in a 55 miles-per-hour zone and stating that "[i]t is universally acknowledged that speed kills").  Thus, the State proved that Jarvis's failure to perceive a substantial risk of death from her conduct grossly deviated from an ordinary standard of care.  *See Graham*, 657 S.W.2d at 101.  Viewing all the evidence in the light most favorable to the prosecution and giving full play to the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, we hold that the evidence is legally sufficient to support Jarvis's conviction for criminally negligent homicide.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  Accordingly, we overrule Jarvis's only point and affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 11, 2010