

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00077-CR

_____

RYAN OSCAR GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 81st District Court
Frio County, Texas
Trial Court No. 23-03-00046CRF, Honorable Jennifer M. Dillingham, Presiding

January 15, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Ryan Oscar Garcia, was convicted by a jury of criminally negligent homicide. Punishment was assessed at two years in a state jail facility, suspended in favor of community supervision for five years.[1] By his original

---

[1] Originally appealed to the Fourth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Fourth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

and reply brief, Appellant maintains (1) the evidence is insufficient to support his conviction and (2) the trial court erred in denying his requested instruction that clarified the required conduct to find criminal negligence under section 19.05(a) of the Texas Penal Code. We affirm.

## BACKGROUND

During the evening hours of October 22, 2020, people were dispersing after a homecoming parade and bonfire. Appellant was in the vicinity traveling in his maroon truck at a very high rate of speed on a four-lane street with a posted speed limit of thirty-miles-per-hour. The decedent, who was in a smaller truck, was stopped at an intersection controlled by a stop sign. According to an eyewitness who was traveling behind the decedent's truck, the driver stopped and looked both ways before entering the intersection. The witness testified she could see the headlights of Appellant's truck approximately two blocks away but heard him "coming fast." As Appellant's truck approached the intersection, he stepped on the gas causing a loud motor sound as if he was revving the engine. When the decedent's truck entered the intersection, it was t-boned on the passenger's side by Appellant's truck. Appellant's truck came to rest against a residence and the decedent's truck hit the fence. He eventually died from multiple blunt force injuries.

Another witness testified she and her husband were driving nearby when she heard Appellant's truck accelerating and "coming really fast." Her husband commented "it is going to be a miracle if that truck doesn't hit somebody." She described Appellant as swerving in and out of traffic—"he is coming and then cuts in front of them and then

2

goes back." She and her husband heard a loud bang and saw Appellant's truck hit the decedent's truck.

Another witness testified she picked her daughter and a friend up from the homecoming festivities. On the way home, the witness heard a loud engine accelerating and noticed a truck behind her "going between the cars pretty fast" and driving between both lanes of the four-lane street. She felt compelled to move into the lane for oncoming traffic to avoid being hit. She then heard a "big, loud crash" and saw a truck crash into a fence. During cross-examination, she could not identify which truck was traveling behind her. After the collision, she saw Appellant pacing back and forth and "heard him say that his grandma was at the ER and that he was sorry."

The witness's daughter testified she felt her mother swerve the car and saw a maroon truck speed past them. She described it as "zigzagging through cars." She told her mother and friend, "I hope he doesn't hit another car because he was going pretty fast." She heard the crash and then observed that the impact had caused Appellant's truck to hit a residence and the decedent's truck hit a fence.

An autopsy revealed the decedent had a blood alcohol concentration of 0.16.[2] The medical examiner, however, testified the high blood alcohol concentration did not contribute to his injuries or death. Her report listed the manner of death as an accident. She also testified that use of a seat belt by the decedent would have prevented most of the injuries.

---

[2] Various witnesses testified they did not smell any alcohol on the decedent.

A trooper with the Texas Department of Public Safety conducted an accident reconstruction. She downloaded data from the black boxes of each truck involved and generated a report. She testified the decedent's truck had the brakes applied and was stopped eight seconds before the collision. At six seconds before the collision, the brakes were disengaged and at five seconds before the collision, the truck traveled forward at two miles per hour and accelerated to fifteen miles per hour just before the accident. The data showed a seat belt was not in use. In the report regarding the decedent's truck, she indicated a contributing factor of the collision was the decedent's failure to yield the right-of-way to Appellant at the intersection. She explained that certain statutes in the Texas Transportation Code presume that when a collision occurs at an intersection where there is no traffic control device but only a stop or yield sign, the driver of the vehicle entering the intersection fails to yield the right-of-way regardless of the speed of the oncoming vehicle.[3] She elaborated that because she only had eight seconds of data on the truck's brakes, it was very possible that between five seconds and eight seconds, the decedent was at zero speed but that was not confirmed by data from the black box.

The trooper also analyzed data from the black box of Appellant's truck. According to the data, at five seconds before the collision, Appellant was traveling at eighty-two miles per hour and then accelerated to eighty-seven miles per hour at three seconds prior to impact. Just before the collision, his speed was seventy-four miles per hour. She also

---

[3] Section 545.153 provides in part as follows:

> (b) Unless directed to proceed by a police officer or other official traffic control device, an operator approaching an intersection on a roadway controlled by a stop sign, after stopping as required by Section 544.010, shall yield the right-of-way to a vehicle that has entered the intersection from another highway or that is approaching so closely as to be an immediate hazard to the operator's movement in or across the intersection.

4

evaluated the percentage Appellant used in pressing the gas pedal. Five seconds before impact, the data reported ninety-nine percent—the highest threshold the data can measure. He continued at ninety-nine percent until three-and-a-half seconds before the collision and then took his foot off the gas pedal and decelerated to zero percent one-and-a-half seconds before the collision at which time the brakes were applied.

During cross-examination, the trooper testified she reviewed a video from a business located approximately .19 miles from the scene of the collision. The video recorded the traffic flow pattern which included Appellant driving by just before the collision. According to the trooper's calculations, Appellant was traveling sixty-four miles per hour on the four-lane street.

Continuing with the trooper's cross-examination, the defense strategized the decedent's level of intoxication impaired his motor skills and slowed his reaction times. When asked if the decedent entered the intersection when it was unsafe to do so, the trooper answered affirmatively. She also confirmed that section 545.151(f) of the Transportation Code presumes the driver who fails to yield at a stop sign is at fault for a collision at an intersection.[4]

At the conclusion of the State's case-in-chief, Appellant moved for a directed verdict arguing the evidence was insufficient to establish he caused the collision and alleged the decedent was at fault. The motion was denied, and the defense presented

---

[4] Section 545.151(f) provides as follows:

> An operator who is required by this section to stop and yield the right-of-way at an intersection to another vehicle and who is involved in a collision or interferes with other traffic at the intersection to whom right-of-way is to be given is presumed not to have yielded the right-of-way.

5

testimony from Appellant's great aunt to justify Appellant's haste at the time of the accident. Over the State's relevance objection, the witness testified that her sister, Appellant's grandmother, had passed away. Any further testimony regarding her death was met with hearsay objections by the State which the trial court sustained.[5]

## ISSUE ONE—SUFFICIENCY OF THE EVIDENCE

Appellant maintains the evidence is insufficient to support his conviction because the State did not prove beyond a reasonable doubt that his actions caused the accident and ensuing death. He also complains that presentation of the manner and means in the conjunctive in the jury charge created a variance which rendered the evidence insufficient. We disagree.

### Variance Between Indictment and Evidence

Appellant was charged with criminally negligent homicide. The State initially alleged he was traveling "in excess of 70 mph *and* weaving in and out of traffic . . . ." The indictment was amended by interlineation which changed the manner and means to traveling "in excess of the speed limit *and* weaving in and out of traffic . . . ." (Emphasis added).

When reviewing a sufficiency challenge based on a variance between the indictment and the proof at trial, only a "material" variance will render the evidence

---

[5] During the punishment phase, Appellant testified he was on a job site in New Mexico and received a call that his grandmother was on her death bed, and he was on his way to Laredo, Texas. However, he traveled to Pearsall first to see his wife. Review of sufficiency of the evidence is necessarily limited to the evidence before the jury at the time it rendered its guilty verdict. *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993). Thus, any evidence revealed during the punishment phase does not factor into this Court's sufficiency review.

6

insufficient. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). "A variance occurs when there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 244 (Tex. Crim. App. 2011). A variance that is not prejudicial to a defendant's substantial rights is immaterial. *Id.* at 248. "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included." *Gollihar*, 46 S.W.3d at 257. The test to determine whether a defendant's substantial rights have been affected by a variance is whether the indictment, as written, informs the defendant of the charge against him sufficient to allow him to prepare an adequate defense at trial, and whether prosecution under the indictment would subject the defendant to the risk of subsequently being prosecuted for the same crime. *Id.*

Appellant was ultimately indicted as follows:

[Appellant], did then and there: with criminal negligence, cause the death of an individual, namely, Efrain Leal Sr., by traveling at a speed in excess of the speed limit and weaving in and out of traffic, causing his vehicle to collide with the said Efrain Leal Sr.'s vehicle.

Article 21.15 of the Texas Code of Criminal Procedure provides that when an accused is charged with criminal negligence in the commission of an offense, the charging instrument, in order to be sufficient, "must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence." TEX. CODE CRIM. PROC. ANN. art. 21.15.

As amended, the indictment informed Appellant of the charges against him and the allegation that the act of speeding was relied on to constitute criminal negligence.

7

The amended indictment allowed him to prepare an adequate defense and defense counsel vigorously presented such a defense. There was also no risk of a subsequent prosecution for the same offense. There was no discrepancy between the interlineation and the evidence presented at trial which showed Appellant was traveling in excess of the speed limit at the time of the collision.[6] There was no material variance by the amended indictment sufficient to cause prejudice to his substantial rights.

Appellant contends that because the charge instructed the jury on the manner and means in the conjunctive—traveling in excess of the speed limit *and* weaving in and out of traffic, the State was required to prove both and failed to do so. The State "is allowed to anticipate variances in the proof by pleading alternative 'manner and means' in the conjunctive when proof of any one 'manner and means' will support a guilty verdict." *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990); *Rundell v. State*, No. 04-94-00641-CR, 1996 Tex. App. LEXIS 5925, at *2 (Tex. App.—San Antonio 1996, no pet.) (mem. op., not designated for publication). Additionally, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997), implemented the concept of reviewing sufficiency of the evidence under a hypothetically correct jury charge. Thus, the State's theories of liability are not restricted by the language contained in the jury charge. *Malik*, 953 S.W.2d at 240.

**Criminal Negligence**

A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05. A person acts with criminal negligence with respect to circumstances surrounding his conduct or the result

---

[6] There was also evidence that Appellant was swerving around vehicles and zigzagging around them.

of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* at § 6.03(d). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (quoting *Montgomery v. State*, 369 S.W.3d 188, 193 (Tex. Crim. App. 2012)). To find a defendant criminally negligent, a jury determines that the defendant's failure to perceive the associated risk is so great as to be worthy of criminal punishment. *Queeman*, 520 S.W.3d at 623. Determining whether a defendant's conduct involves an extreme degree of risk must be determined by the conduct itself and not by the resultant harm. *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 753 (Tex. Crim. App. 2007)).

**Sufficiency of the Evidence**

Due process requires that a conviction be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). The only standard a reviewing court should apply is whether a rational jury could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the sufficiency of the evidence, we consider all evidence, direct and circumstantial and whether properly or improperly admitted, and view it in the light most favorable to the verdict. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex.

9

Crim. App. 2023). In doing so, we compare the statutory elements as defined by a hypothetically correct jury charge. *Id.* The trier of fact is the sole judge of the credibility and weight to be attached to the evidence. *Id.* When the record supports conflicting inferences, we presume the trier of fact resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

Appellant relies heavily on *Queeman* in which the Court found the evidence insufficient to support a conviction for criminally negligent homicide. In *Queeman*, the appellant was driving on a two-lane highway when his van rear-ended a vehicle which had stopped to make a left turn, killing the driver. 520 S.W.3d at 619. The Court of Criminal Appeals agreed with an appellate court's acquittal due to insufficient evidence to show the appellant was excessively speeding at the time of the accident or that he was engaged in any risk-creating conduct. *Id.* at 621. Queeman's driving errors were not egregious enough to show a gross deviation from the standard of care in driving. *Id.* The Court explained that the carelessness required for criminal negligence "must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong." *Id.* at 629 (quoting *People v. Boutin*, 555 N.E.2d 253, 254 (New York 1990)).

To the contrary, in the underlying case, the evidence is undisputed that Appellant was speeding excessively (the black box revealed acceleration to eighty-seven miles per hour three seconds before the collision). To Appellant's credit, as in *Queeman*, there was no evidence he was distracted or inattentive. But his extremely high rate of speed on a four-lane street at night constituted egregious conduct which deviated from the ordinary standard of care. In fact, in agreeing with the appellate court's acquittal, the Court in

*Queeman* acknowledged "the evidence fail[ed] to show that [Queeman] grossly deviated from the standard of care, for example, by *excessively speeding.*" (Emphasis added). *Id.* at 630. Unlike in *Queeman*, Appellant's conduct was not such as ordinarily engaged in by drivers and accepted as a reasonable risk in exchange for the social utility provided. *Id.* at 631. Thus, the rationale in *Queeman* supports Appellant's conviction for criminally negligent homicide due to speeding almost three times over the posted speed limit.

Appellant also relies on *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). *Miller* involved a motion to suppress in which indisputable visual evidence contradicted a trial court's findings thereby dispensing with deferential review to the trial court's ruling. Invoking *Miller,* Appellant maintains the surveillance video admitted into evidence showing the flow of traffic a few blocks from the scene of the collision disproved and contradicted testimony from the State's witnesses that he was driving recklessly. The trooper, however, in evaluating that video testified Appellant was traveling approximately sixty-four miles per hour when he was captured on video. The business with the surveillance camera was located approximately two blocks from the scene of the collision. It could not have recorded the entirety of Appellant's travels for the next two blocks where the collision occurred. Assuming, arguendo, some of the State's witnesses' testimony was contradicted by the video, other evidence was presented to support criminal negligence such as the testimony from the driver of the vehicle positioned behind the decedent and testimony from the trooper of Appellant's high rate of speed. Therefore, we disagree with his contention that the State's evidence was rendered insufficient by the video from a surveillance camera positioned at least two blocks from the scene of the collision.

11

Appellant also relies on *Vitela v. State*, 649 S.W.3d 649 (Tex. App.—San Antonio 2022, pet. ref'd), to support his claim that the evidence failed to assign blameworthiness to his conduct especially when the evidence showed the decedent entered the intersection at a time when it was unsafe to do so. *Vitela* involved a crash on a curve with a posted speed limit of fifteen miles per hour. *Id.* at 658. According to data from the black box, the appellant was driving 115 miles per hour five seconds before entering the curve and slowed to no less than 61.7 miles per hour when he collided with a tree that killed one of his passengers. *Id.* The San Antonio Court concluded "it was not unreasonable for the jury to find beyond a reasonable doubt that Vitela failed to perceive a substantial and unjustifiable risk that he could crash his car and kill his passengers by driving about fifty miles per hour over the posted speed limit . . . ." *Id.* The Court further concluded Vitela's conduct was a gross deviation from the standard of care an ordinary person would exercise in Vitela's position. *Id.* at 659.

Appellant disregards that he traversed a four-lane street in an unsafe manner by traveling at a very high rate of speed which was established by data from the black box of his truck. *See Thompson v. State*, 676 S.W.2d 173, 176–77 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (criminal negligence established when the appellant struck and killed a pedestrian walking to a bus stop while driving over fifty miles per hour in a thirty mile per hour zone).

Appellant argues the decedent was at fault for failing to yield the right-of-way to him and that there is no evidence Appellant caused the collision. We acknowledge the law presumes the decedent failed to yield the right-of-way to Appellant, but there was testimony the decedent stopped at the intersection, looked both ways, and then

12

proceeded into the intersection. The decedent could not have anticipated that Appellant was speeding almost three times over the posted speed limit. *See Cooks v. State*, 5 S.W.3d 292, 295–96 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Similarly, in *Cooks*, the driver of the vehicle whose three passengers were killed when the appellant struck them failed to yield the right-of-way. *Id.* The appellant argued the driver who failed to yield to him caused the accident. *Id.* at 295. The court reasoned that despite the failure to yield, the evidence was sufficient to support the appellant's convictions for manslaughter due to his reckless speeding—traveling 100 miles per hour just before an intersection with a posted speed limit of fifty-five miles per hour. *Id.* at 295–96. The driver of the vehicle the appellant struck "could not reasonably anticipate" his speed when she entered the intersection. *Id.* at 296.

In the underlying case, although the evidence revealed the decedent was intoxicated and the trooper confirmed the decedent entered the intersection when it was unsafe to do so, Appellant was traveling at such a high rate of speed under the circumstances. Numerous witnesses testified they heard Appellant's engine revving and observed him weaving in and out of traffic on a four-lane street at night with residences in the area. Several witnesses expressed concern that he might hit another vehicle at the speed he was traveling. Data collected from the black box of Appellant's truck showed him accelerate to an unreasonable and unsafe speed and he did not apply the brakes until a half second before the collision. Appellant should have been aware that reaching a speed of eighty-seven miles per hour on a four-lane street with a speed limit of thirty miles per hour was a substantial and unjustifiable risk. His failure to perceive that risk constituted a gross deviation from the standard of care than an ordinary person would

13

have exercised under the circumstances as viewed from his standpoint. Deferring to the jury's determination, we conclude the evidence is sufficient to support Appellant's conviction. Issue one is overruled.

**ISSUE TWO—JURY CHARGE ERROR**

Appellant contends the trial court erred in denying his request for an instruction to include language from caselaw which he asserts would have clarified the required conduct for finding criminal negligence under section 19.05(a) of the Penal Code. We disagree.

Appellate review of claimed jury-charge error involves a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). A reviewing court must initially determine whether charge error occurred. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If so, the next step requires the reviewing court to analyze the error for harm with the standard of review being dependent on whether error was preserved for appeal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Where, as here, the error was preserved by objection or request for an instruction, reversal is required only if the appellant suffered "some" harm. *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013).

During the charge conference, the trial court submitted the proposed charge for review by counsel. "Criminal negligence" was defined as follows:[7]

---

[7] The instruction tracks verbatim the definition as provided in section 6.03(d) of the Penal Code.

14

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Defense counsel objected to the definition of "criminal negligence" and requested inclusion of certain language from *Tello v. State*, 180 S.W.3d 150, 158 (Tex. Crim. App. 2005), to expand the definition. The trial court permitted him to dictate the following request:

You are instructed that criminally negligent homicide requires not only a failure to perceive a risk of death, but also some serious blameworthiness in the conduct that caused it. The risk involved must have been "substantial and unjustifiable," and the failure to perceive that risk must have been a "gross deviation" from reasonable care as viewed from the actor's standpoint.

Thereafter, the trial court denied the requested instruction.

We review a trial court's refusal to submit a jury instruction for abuse of discretion. *Smith v. State*, No. 04-13-00711-CR, 2014 Tex. App. LEXIS 13705, at *31 (Tex. App.—San Antonio Dec. 23, 2014, no pet.) (mem. op., not designated for publication). A jury charge, such as the one presented in the underlying case, in which the definition of the culpable mental state tracks the language as provided in the Texas Penal Code, is not error. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that a jury charge that tracks statutory language is proper because following the law as set out by the Texas Legislature will not be deemed error by the trial court). *See also Smith*, 2014 Tex. App. LEXIS 13705, at *31.

Because the definition of "criminal negligence" in the charge was grounded on section 6.03(d), we find no error was presented in the court's charge regarding the culpable mental state. Thus, we need not analyze the trial court's refusal to submit the proposed instruction for "some" harm. The trial court did not abuse its discretion in denying Appellant's requested instruction. Issue two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.

16